**Willis Lansing GANGER, Appellee,**

**v.**

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellant (two cases).**

**Nos. 11102, 11103.**

United States Court of Appeals
Fourth Circuit.

Argued April 3, 1967.

Decided May 30, 1967.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Burton, Atty. Gen. of Virginia, on brief), for appellant.

E. Waller Dudley, Alexandria, Va. (Court-assigned counsel), for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

This is an appeal by the Superintendent of the Virginia State Penitentiary from a judgment of the district court vacating and setting aside two sentences of imprisonment imposed upon Ganger by circuit courts of Virginia.

*The King George County Conviction*

Ganger was convicted on September 27, 1963, and sentenced to a term of five years in the penitentiary for the offense of indecent exposure. The district judge was of the opinion that he was so ineffectively represented by counsel as to make a farce of the trial, citing for comparison Root v. Cunningham, 344 F.2d 1 (4th Cir. 1965).

■■ We do not reach the question because it is apparent that Ganger has not exhausted his state court remedies. It is unfortunate that state prisoners sometimes prefer the federal courts to the extent of ignoring the concurrent jurisdiction of state courts which have the primary duty of assuring the constitutionality of state trials. That the federal district court had the *power* to afford Ganger relief is not enough. It is still "unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation * *." Darr v. Burford, 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950), quoted with approval in Fay v. Noia, 372 U.S. 391, at 420, 83 S.Ct. 822, 839, 9 L.Ed. 2d 837 (1963). The doctrine of comity "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Id.

■ In deciding to exercise jurisdiction, the district judge accorded too much weight to the effect of the direct appeal by Ganger to the Supreme Court of Appeals of Virginia. Seldom does the ineffectiveness of counsel appear on the face of the trial record without the necessity of developing the facts in respect to counsel's conduct in a supplemental proceeding. Denial of relief on the appeal does not mean that consideration of Ganger's contention is foreclosed in the state courts. Ganger should have filed a petition for writ of habeas corpus in the Circuit Court of King George County alleging ineffective representation. Such a remedy was available to him then and is presently available despite

the long delay occasioned by his proceeding initially in federal court.

We respect and commend the nontechnical attitude of the district judge that moved him to consider the merits of the matter. Cf. Webb v. Peyton, 345 F.2d 521 (4th Cir. 1965). But this is more than a question of procedural nicety. It is becoming increasingly apparent that the federal district courts cannot possibly process all of the claims of state prisoners,[1] nor should they attempt to do so, without deferring initially to the state courts—if such courts offer available and adequate remedies.

### Stafford County Conviction

Ganger received a six-month sentence in Stafford County for assaulting his wife. This sentence is to begin after he completes service of the five-year sentence imposed in King George County. But for the six-month sentence, Ganger would have been eligible for parole on the five-year sentence in November 1966. Unlike the King George County case, he could not have effectively sought relief in the state courts of Virginia from the six-month sentence imposed upon him in Stafford County. This is so because the Supreme Court of Appeals of Virginia continues to adhere to the rule that habeas corpus is not available to one until he begins actual service of the sentence attacked, Peyton v. Williams, 206 Va. 595, 145 S.E.2d 147 (1965), and Ganger had not begun to serve his Stafford County sentence at the time he filed his petition.

In Martin v. Commonwealth of Virginia, 349 F.2d 781 (4th Cir. 1965), we reexamined the concept, established in McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), that a sentence which a prisoner has not actually begun to serve does not satisfy the requirement in 28 U.S.C.A. Section 2241, defining the scope of federal habeas corpus, that the petitioner be "in custody," even though

the result of the challenged sentence is to thwart his eligibility for parole. In the opinion by Judge Sobeloff, we concluded that Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), have equated "custody" with "restraint of liberty," and held that a denial of eligibility for parole is a sufficient restraint so as to put one "in custody" within the expanded meaning of 28 U.S.C.A. Section 2241. This court has since further liberalized the conditions under which a prisoner is deemed "in custody" within the meaning of 28 U.S.C.A. Section 2241. See Williams v. Peyton, 372 F.2d 216 (4th Cir. 1967); Tucker v. Peyton, 357 F.2d 115 (4th Cir. 1966).

Since Ganger was "in custody" within the meaning of 28 U.S.C.A. Section 2241 as to the six-month Stafford County sentence, the district court had jurisdiction to consider the petition. Moreover, because of the absence of an available state court remedy, there was no duty upon the district court to defer entertainment of the petition out of comity.

The Stafford County conviction is constitutionally invalid. The district court found that the state prosecuting attorney represented Ganger's wife in the prosecution of a divorce action which was pending at the time of the criminal trial and was based upon the same alleged assault on Mrs. Ganger. Ganger testified that the prosecuting attorney offered to drop the assault charge if Ganger would make a favorable property settlement in the divorce action. Ganger told his lawyer who represented him at the assault trial of the offer, and his lawyer discussed the matter with the prosecuting attorney. The district judge found as a fact that the prosecuting attorney neither admitted nor denied having made the offer, but the record below indicates that Ganger's attorney testified that the prosecuting

---

1. For the period from July 1, 1965, to July 1, 1966, 6,248 state prisoner petitions were filed in the federal district courts. This compares with 872 in the fiscal year 1960. W. Shafroth, Survey of the United States Courts of Appeals, Table S–5 (January 22, 1967).

attorney denied it. Perhaps influenced by the failure of the prosecuting attorney to testify in the habeas corpus proceeding,[2] the district judge concluded that there had been such an offer. His finding is supported by substantial evidence and is not clearly erroneous.

The Assistant Attorney General of Virginia concedes that the Commonwealth's Attorney should not have prosecuted the criminal case at the same time he was representing Ganger's wife in the divorce proceeding.[3] We agree. Such a conflict of interest clearly denied Ganger the possibility of fair minded exercise of the prosecutor's discretion. Not every criminal case goes to trial. Prosecuting attorneys frequently decline to charge, or nol pros,[4] criminal cases—especially ones arising out of domestic relations. Aside from the possibility of a favorable charge decision, including nol pros, there is always the prospect of plea bargaining.[5]

2. The district judge found that he refused to come to court and the state did not subpoena him.

3. It is not clear whether the concession is made on the ground of an admitted constitutional violation or on the ground of a violation of the legal canons of ethics. The Legal Ethics Committee of the Virginia State Bar has unequivocally condemned representation by Commonwealth Attorneys of litigants in controversies relating to matters with which they must deal in the performance of their official duties. See Opinions of the Legal Ethics Committee, Virginia State Bar, Opinions No. 1 (Aug. 5, 1942), No. 32 (June 30, 1951), No. 117, March 29, 1963), No. 121 (Jan. 11, 1963), No. 131 (Oct. 2, 1963). In Opinion Number 121 the Committee states that "an attorney's acceptance of the office of Commonwealth's Attorney disqualfies him from private practice insofar as such private practice relates to matters with which he must deal in the performance of his official duties, and he should not accept representation in any civil matter, the subject of which is within the scope of his official duties, until final disposition has been made of all reasonable possibilities of any present or future duty on his part."

4. The extensive powers of the prosecuting attorney are reviewed in Note, Prosecutor's Discretion, 103 Pa.L.Rev. 1057 (1955). The author concludes that "[t]he discretionary power exercised by the prosecuting attorney in initiation, accusation, and discontinuance of prosecution gives him more control over an individual's liberty and reputation than any other public official." Id.
The Report of the President's Commission on Law Enforcement and Administration of Justice recognizes in a section entitled "Diversion of Cases Before Charge" that approximately one-half of those arrested are dismissed by the police, a prosecutor, or a magistrate at an early stage of the case. *Nolle prosequi* relates to dismissal *after* charge, but a prosecutor in his discretion may decline to file a charge. The Commission "regards the exercise of discretion by prosecutors as necessary and desirable" and recommends that prosecutors "make discriminating charge decisions" on the basis of explicit policies. The Commission's report includes the following quote: "When the charge is reduced, as it is in as many as two-thirds of all cases in some cities, the prosecutor is usually the official who reduces it." The President's Comm'n of Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Soc'y at 11 (1967). In an article in the Saturday Evening Post, adapted from a book to be entitled Lawyers and Laws, by Martin Mayer, it is said that of those arrested on a serious criminal charge, more people are cleared and released by the police themselves than by the entire legal process of arraignment, preliminary hearing, indictment by the grand jury, and trial. The author then suggests that "a defendant's next best chance is to persuade the D.A. not to prosecute; six or seven times as many people are released between arraignment and trial as are acquitted after a trial." He then quotes an experienced criminal lawyer and defense attorney as saying "the district attorneys don't go around indicting people indiscriminately." M. Mayer, The Criminal and the Law, The Saturday Evening Post, Feb. 4, 1967, at 25.

5. It is increasingly recognized that plea bargaining is an essential, inevitable, and not improper part of the criminal process. See ABA Project on Minimum Standards for Criminal Justice, Pleas of Guilty, pt. 3 (Tent. Draft Feb. 1967).
The President's Commission on Law En-

Because of the prosecuting attorney's own self-interest in the civil litigation [6] (including the possibility that the size of his fee would be determined by what could be exacted from defendant), he was not in a position to exercise fair-minded judgment with respect to (1) whether to decline to prosecute, (2) whether to reduce the charge to a lesser degree of assault,[7] or (3) whether to recommend a suspended sentence or other clemency.

Representing Ganger's wife in the divorce proceeding suggests the strong possibility that the prosecuting attorney may have abdicated to the prosecuting witness (Ganger's wife) in the criminal case the exercise of his responsibility and discretion in making charge decisions. If she did not actually make the decision to prosecute for felonious assault, certainly her interests were influential, and those conflicting interests may have impeded appropriate plea bargaining.[8]

At common law, a prosecuting attorney "is the representative of the public in whom is lodged a discretion * * *, which is not to be controlled by the courts or *by an interested individual* * * *."

United States v. Brokaw, 60 F.Supp. 100, 101 (S.D.Ill.1945), quoted with approval in United States v. Cox, 342 F.2d 167, 192 (5th Cir. 1965) (Judge Wisdom concurring) (emphasis added).

The Supreme Court of Appeals of Virginia, in Macon v. Commonwealth, 187 Va. 363, 373, 46 S.E.2d 396, 401 (1948), said:

"While the laws of the State vest in this officer [prosecuting attorney] wide authority in instituting prosecutions, such authority carries with it a commensurate responsibility. It should be exercised with caution and only in cases where, after a proper investigation, he is reasonably satisfied of the guilt of the person suspected of crime. It is just as much his duty to protect his fellow citizens from unjustified prosecutions as it is to prosecute those who are guilty."

In *Macon*, the Supreme Court of Appeals of Virginia reversed the murder conviction of the defendant on another ground, but intimated that the unfairness of the prosecuting attorney to the defendant may have disqualified him from acting as prosecutor in the case.

---

forcement and Administration of Justice has reported:

"The negotiated guilty plea serves important functions. As a practical matter, many courts could not sustain the burden of having to try all cases coming before them. The quality of justice in all cases would suffer if overloaded courts were faced with a great increase in the number of trials. Tremendous investments of time, talent, and money, all of which are in short supply and can be better used elsewhere, would be necessary if all cases were tried. It would be a serious mistake, however, to assume that the guilty plea is no more than a means of disposing of criminal cases at minimal cost. It relieves both the defendant and the prosecution of the inevitable risks and uncertainties of trial. It imports a degree of certainty and flexibility into a rigid, yet frequently erratic system. The guilty plea is used to mitigate the harshness of mandatory sentencing provisions and to fix a punishment that more accurately reflects the specific

circumstances of the case than otherwise would be possible under inadequate penal codes. It is frequently called upon to serve important law enforcement needs by agreements through which leniency is exchange for information, assistance, and testimony about other serious offenders.

\* \* \* \* \*

"Plea negotiations can be conducted fairly and openly, can be consistent with sound law enforcement policy, and can bring a worthwhile flexibility to the disposition of offenders." The President's Comm'n on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Soc'y at 135 (1967).

6. Such a conflict of interest as found by the district court might well amount to abuse of process. See Prosser, Torts § 115, at 876 (3d ed. 1964).

7. Ganger was actually tried for felonious assault, the maximum punishment for which was twenty years.

8. See note 5 supra.

In Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), the state prosecutor's knowing use of perjured testimony was held to be a denial of due process of law in violation of the Fourteenth Amendment. The Attorney General of California contended that " 'the acts or omissions of a prosecuting attorney can ever, *in and by themselves,* amount either to due process of law or to a denial of due process of law'." 294 U.S. at 111–112, 55 S.Ct. at 341. In a per curiam opinion, the Supreme Court said:

> "Without attempting at this time to deal with the question at length, we deem it sufficient for the present purpose to say that we are unable to approve this narrow view of the requirement of due process. That requirement, in safeguarding the liberty of the citizen against deprivation through the action of the state, embodies the fundamental conceptions of justice which lie at the base of our civil and political institutions." 294 U.S. at 112, 55 S.Ct. at 341–2.

The Court went on to say that "the action of prosecuting officers on behalf of the state, * * * may constitute state action within the purview of the Fourteenth Amendment." 294 U.S. at 113, 55 S.Ct. at 342.

In Tumey v. State of Ohio, a case involving the compensation of a mayor from costs and fines he imposed on those convicted of criminal offenses, the Supreme Court said:

> "That officers acting in a judicial or quasi judicial capacity are disqualified by their interest in the controversy to be decided is of course the general rule. * * * [I]t certainly violates the Fourteenth Amendment and deprives a defendant in a criminal case of due process of law to subject his liberty or property to the judgment of a court, the judge of which has a direct, personal, substantial pecuniary interest in reaching a conclusion against him in his case." 273 U.S. 510, 522, 47 S.Ct. 437, 441, 71 L.Ed. 749 (1927).

The prosecuting attorney is an officer of the court, holding a quasi judicial position. "[H]is primary responsibility is essentially judicial—the prosecution of the guilty and the protection of the innocent, Griffin v. United States, 295 F. 437, 439–440 (C.A. 3, 1924); his office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest." Bauers v. Heisel, 361 F.2d 581, 590 (3d Cir. 1966).

Although conceding that the prosecuting attorney should not have represented Ganger's wife in private litigation at a time when he was charged with the duty to fairly prosecute or otherwise fairly dispose of the criminal charge against Ganger, the State contends that the improper conduct resulted in no harm to Ganger. We cannot so assume.[9] It is true that although charged with a serious assault that could have resulted in imprisonment to the extent of twenty years, Ganger was convicted of a lesser assault and sentenced to only six months. But we do not know and cannot now ascertain what would have happened if the prosecuting attorney had been free to exercise the fair discretion which he owed to all persons charged with crime in his court. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 711 (1967).

We think the conduct of this prosecuting attorney in attempting at once to serve two masters, the people of the Commonwealth and the wife of Ganger, violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); see also Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1

---

9. See Whitaker v. Warden, 362 F.2d 838, (4th Cir. 1966).

(1967) (prosecutor's arbitrary use of nol pros with leave held unconstitutional).

The judgment of the district court granting the writ of habeas corpus and vacating the sentence in the King George County case is reversed. The judgment of the district court granting the writ and vacating the sentence in the Stafford County case is affirmed.

No. 11,102, affirmed.

No. 11,103, reversed.