**Stanley DICK, Petitioner–Appellant,**

v.

**Gene SCROGGY, Warden,**
**Respondent–Appellee.**

No. 88–5291.

United States Court of Appeals,
Sixth Circuit.

Argued May 19, 1989.

Decided and Filed Aug. 14, 1989.

Stanley Dick, Kentucky State Penitentiary, Eddyville, Ky., Charles E. English, Jr. (argued), English, Lucas, Priest & Owsley, Bowling Green, Ky., for Stanley Dick, petitioner-appellant.

Frederic J. Cowan, Atty. Gen., David K. Martin, John Gillig (argued), Asst. Attys. Gen., Frankfort, Ky., for Gene Scroggy, Warden, respondent-appellee.

Before MILBURN and NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

The petitioner in this habeas corpus case was convicted in a Kentucky state court on felony charges arising out of a motor vehicle accident caused by his drunken driving. Shortly after the conviction a civil action for damages was filed against petitioner by a woman who had been injured in the accident. The lawyer representing the plaintiff in the personal injury case was the same person who had prosecuted petitioner in the criminal case.

Assuming, as we must on the record before us, that the prosecutor had undertaken the representation of the injured woman before the conclusion of petitioner's criminal trial, the main issue in the habeas case is whether the prosecutor's dual role so tainted the criminal proceedings as to compel the conclusion that petitioner was deprived of his liberty without due process of law in violation of the Fourteenth Amendment. The district court found no constitutional violation and dismissed the petition. We agree that any personal interest the prosecutor may have had was insufficient to render petitioner's conviction constitutionally infirm, and we shall affirm the judgment of the district court.

I

On January 21, 1984, a pickup truck operated by the petitioner, Stanley Dick, ran a stop sign at an intersection in Calloway County, Kentucky, colliding with another vehicle. A passenger in the second vehicle, Phyllis Robinson, sustained potentially life-threatening injuries. An empty whiskey bottle was removed from Mr. Dick's boot on his arrival at the hospital after the accident, and his blood alcohol content was measured at .24 percent. Under Ky.Rev. Stat. § 189.520(3)(c), a blood alcohol content of less than half that percentage—.10 percent—creates a legal presumption that the operator was under the influence of intoxicating beverages.

Mr. Dick was indicted for second degree assault, and he was charged with being a persistent felony offender in the first degree. (Under Ky.Rev.Stat. § 532.080, a persistent felony offender in the first degree must have been convicted of two or more predicate felonies; under Ky.Rev. Stat. § 508.020(1)(c), a person is guilty of assault in the second degree when he wantonly causes serious physical injury to another person by means of a deadly weapon or dangerous instrument.)

Mr. Dick's trial was originally set for March 6, 1984, but according to the Kentucky Court of Appeals his court-appointed counsel sought and obtained leave to withdraw at the last minute "due to appellant's unwillingness to cooperate, appellant's allusion to fictional witnesses, and appellant's belief that counsel was part of a conspiracy against him." A new attorney was appointed, and the case was continued to May 22, 1984.

On that date Mr. Dick was tried before a jury on the second-degree assault charge. The jury found him guilty. Another trial was then held on the persistent felony offender charge; this too resulted in a guilty verdict. He received a 10–year sentence under the minimum sentencing requirement of the persistent felony offender statute.

Mr. Dick appealed to the Kentucky Court of Appeals, contending that he had been convicted on insufficient evidence, that he

should only have been charged with driving under the influence of alcohol and not with second-degree assault, and that he was unduly prejudiced because the court mislabeled a lesser included offense charge. A reference in Mr. Dick's reply brief to the prosecutor's alleged dual role was stricken on motion. The appeal was unsuccessful, and the Kentucky Supreme Court denied discretionary review.

Meanwhile, on June 19, 1984, less than one month after the conclusion of the criminal trial and two weeks after the filing of the notice of appeal therein, Phyllis Robinson and her husband brought a civil action against Mr. Dick and his wife for damages sustained in the accident. The prosecutor in the criminal action appeared as counsel for the Robinsons.

On March 4, 1986, Mr. Dick filed a motion in the state trial court, pursuant to Rule 11.42 of the Kentucky Rules of Criminal Procedure, to vacate the judgment in the criminal case. Mr. Dick contended that the criminal proceedings were fundamentally unfair because the prosecutor had already agreed to represent Mrs. Robinson in her civil suit. He asserted that he had told his court-appointed defense attorney about the impending civil suit, but said that the defense attorney did not take any steps to disqualify the prosecutor and did not even inform the trial judge; this inaction, according to Mr. Dick, constituted ineffective assistance of counsel.

Without conducting an evidentiary hearing, the state trial court denied the motion to vacate the conviction. Following an unsuccessful appeal of that ruling Mr. Dick instituted the present habeas corpus proceeding in the United States District Court for the Western District of Kentucky. The habeas petition was dismissed—again without an evidentiary hearing—and the present appeal followed.

## II

In declining to vacate the conviction, the state trial court found that the prosecutor's representation of Mrs. Robinson was not "contracted for until long after the criminal case had been concluded." This finding may have been based on a letter the prosecutor sent Mr. Dick's counsel under date of November 1, 1984, stating among other things:

"I read with interest your Reply Brief in *Commonwealth vs. Dick*, particularly your last paragraph. I thought you might be interested in knowing that I talked with Marty Huelsman, then Chairman of the Ethics Committee, prior to agreeing to represent Phyllis Robinson and he agreed I could handle the civil suit as my participation in the criminal prosecution was complete. Additionally, I never even discussed a civil suit with Phyllis until some time after the criminal case was completed."

Mr. Dick challenges this chronology, alleging that he learned before his criminal trial had even begun that the Commonwealth Attorney assigned to prosecute the case was planning to initiate a civil lawsuit against him.

We are not required to presume the correctness of a state court finding of fact where it appears "that the material facts were not adequately developed at the state court hearing." 28 U.S.C. § 2254(d)(3); *McMillan v. Barksdale*, 823 F.2d 981, 983 n. 3 (6th Cir.1987). No evidentiary hearing having been conducted on the question of when the prosecutor first discussed a civil suit with Phyllis Robinson, we shall assume, as did the federal district court, that the prosecutor's representation of Mrs. Robinson began before his prosecution of the criminal case had been completed.

Mr. Dick argues that the prosecutor's duty as a Commonwealth Attorney was not congruent with his duty as a private attorney for Mrs. Robinson. As a private attorney, the argument runs, the lawyer's job was to obtain as large a judgment or settlement as possible—a task that could well be facilitated by a felony conviction. As a prosecutor, by contrast, the lawyer's interest was not that he should "win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). "Justice," Mr. Dick argues, would have been at most a prosecution and conviction for driving

under the influence of alcohol—a misdemeanor at the time of the accident—and not a prosecution and conviction for the felony of second-degree assault.

■ Mr. Dick does not contend here that the conduct of which he was guilty did not fit within the statutory definition of assault in the second degree, nor does he make any claim of prosecutorial misconduct in the courtroom. A moralist might have some difficulty with the proposition that it was "unjust" for a person who behaved as irresponsibly as Mr. Dick did to be prosecuted on the most serious charge that could be brought for such conduct. Obviously, however, prosecutors are vested with a good deal of discretion in respect of criminal matters—discretion as to whether to bring charges at all, discretion as to the level of charges to be brought, discretion as to the resources to be allocated to the prosecution, discretion as to sentencing recommendations, and discretion as to plea bargaining, for example—and regardless of the defendant's culpability, it is unseemly, to say the least, for such discretion to be exercised by a prosecutor who is not reasonably disinterested.[1]

In *Ganger v. Peyton*, 379 F.2d 709 (4th Cir.1967), a habeas case arising out of a husband's conviction for assaulting his wife, the prosecutor in the criminal case had represented the wife in divorce proceedings based on the same assault. The Court of Appeals for the Fourth Circuit went so far as to hold that the prosecutor's dual role made the criminal proceedings unconstitutional:

"Because of the prosecuting attorney's own self-interest in the civil litigation (including the possibility that the size of his fee would be determined by what could be exacted from defendant), he was not in a position to exercise fair-minded judgment with respect to (1) whether to decline to prosecute, (2) whether to reduce the charge to a lesser degree of assault, or (3) whether to recommend a suspended sentence or other clemency.

Representing Ganger's wife in the divorce proceeding suggests the strong possibility that the prosecuting attorney may have abdicated to the prosecuting witness (Ganger's wife) in the criminal case the exercise of his responsibility and discretion in making charge decisions. If she did not actually make the decision to prosecute for felonious assault, certainly her interests were influential, and those conflicting interests may have impeded appropriate plea bargaining.

\*     \*     \*     \*     \*     \*

We think the conduct of this prosecuting attorney in attempting at once to serve two masters, the people of the Commonwealth and the wife of Ganger, violates the requirement of fundamental fairness assured by the Due Process Clause of the Fourteenth Amendment."

*Id.* at 713, 714 (footnotes and citations omitted).

In the recent case of *Morrison v. Olson*, 487 U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), on the other hand, the United States Supreme Court apparently rejected a claim that criminal proceedings would be rendered unconstitutional by significant practical constraints on the discretion normally vested in the prosecutor. *Olson* involved the Independent Counsel provisions of the Ethics in Government Act of 1978 (28 U.S.C. §§ 591–599), under which a special prosecutor, or "independent counsel," may be appointed for the sole purpose of investigating and prosecuting a single government official. In declaring the special prosecutor provisions unconstitutional, the Court of Appeals for the District of Columbia Circuit, speaking through Judge Silberman, made the following observations:

"A person occupying this statutory office has, it seems to us, unique incentives to seek an indictment. Our concern is based on the self-evident proposition that the whole *raison d'etre* of the independent counsel is not to administer the criminal law across a wide population,

---

1. It may also be illegal; see Ky.Rev.Stat. § 15.733 ("Any prosecuting attorney shall disqualify himself in any proceeding in which he

... [h]as a financial interest in the subject matter in controversy or in a party to the proceeding....").

but rather to focus on one individual or group of individuals targeted at the inception of the office. In effect, an entire self-sufficient government agency is created from scratch to investigate and perhaps prosecute a single individual. The need to justify even the expense of an office dedicated solely to one goal must generate a reluctance to decide against indictment or to conclude the investigation absent near certainty that no indictment is possible or that no further leads remain. And inevitably, the success of the office itself, in the public's eyes, at least, must turn to some extent upon whether indictment and conviction are obtained.

\*　　\*　　\*　　\*　　\*　　\*

More fundamental, perhaps, the independent counsel has no need to view a particular case in relation to similar cases, past or future. Wise exercise of prosecutorial discretion is dependent in part upon access to officials who are participants in the ongoing process of enforcing the law and who are able to take a longer view of an individual case. Yet the independent counsel is cut off from the accumulated lore and wisdom of career Department of Justice officers, who are in a unique position to evaluate '[s]uch factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan.' ... These factors will often counsel against prosecution; a case that seems strong and important when viewed in isolation may look weak or trivial when measured against past cases or in relation to broader considerations of sound deployment of prosecutorial resources."

*In re Sealed Case,* 838 F.2d 476, 509–10 (D.C.Cir.1988) (footnote and citations omitted). The Supreme Court reversed the decision of the Court of Appeals without comment on this branch of Judge Silberman's

opinion, thereby suggesting that whether a prosecutor has "unique incentives to seek an indictment" may be immaterial, from a constitutional standpoint, as long as the criminal trial itself is not unfair.

Politically ambitious and aggressive prosecutors are by no means uncommon,[2] and the zeal of the prosecutor who covets higher office or who has a personal political ax to grind may well exceed the zeal of the prosecutor who has the kind of interest we are assuming in the case at bar. Absent a demonstration of selective prosecution, however, even a clear appearance of impropriety in the participation of the prosecutor is normally insufficient to justify a decision, in collateral proceedings, to administer what Judge Friendly called the "strong medicine" of setting aside a conviction of one found guilty beyond a reasonable doubt in a fair trial before an impartial judge and an unbiased jury. See *Wright v. United States,* 732 F.2d 1048, 1056–57 (2d Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985), where Judge Friendly quoted from *United States v. Addonizio,* 442 U.S. 178, 184–85, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979), as follows:

> "It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attacks on final judgments are well-known and basic to our adversary system of justice. The question in this case is whether an error has occurred that is sufficiently fundamental to come within those narrow limits."

Mindful of the need for particular restraint where a federal court has undertaken collateral review of the final judgment of a state court, we are not persuaded that Mr. Dick's prosecution by a Commonwealth Attorney who may have been less than disinterested constituted an irregularity "suffi-

---

**2.** See *Azzone v. United States,* 341 F.2d 417 (8th Cir.), *cert. denied,* 381 U.S. 943, 85 S.Ct. 1782, 14 L.Ed.2d 706 (1965) (application for writ of error coram nobis denied where defendant alleged,

among other things, that his indictment had been motivated by U.S. Attorney's political ambitions).

ciently fundamental" to justify our setting aside the conviction in this case.

It bears emphasis, we think, that although the prosecutor is an officer of the court, the role of the prosecutor is very different from that of the judge. A financial interest that would disqualify a judge, under cases such as *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), and *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), may be "too remote and insubstantial to violate the constitutional constraints applicable to the decisions of [one] performing prosecutorial functions." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243–44, 100 S.Ct. 1610, 1614, 64 L.Ed.2d 182 (1980). Prosecutors, in an adversary system, "are necessarily permitted to be zealous in their enforcement of the law." *Id.* at 248, 100 S.Ct. at 1616. Prosecutors are supposed to be advocates; judges are not. Thus it is not without significance, in our view, that in the landmark case of *Tumey v. Ohio, supra*, where the mayor of the Village of North College Hill, Ohio, received significant sums from fines assessed in cases tried in the "mayor's court" over which he presided, it was the financial interest of the mayor, sitting as a judge, that led the Supreme Court to hold that convictions obtained in the mayor's court were constitutionally infirm; although the prosecutor received more than twice as much as the mayor out of the fines assessed, the prosecutor's financial interest evoked no critical comment from the Supreme Court.

### III

Mr. Dick asserts that he informed his court-appointed defense attorney of the prosecutor's dual representation, and he claims that the attorney's failure to inform the trial court constituted ineffective assistance of counsel. He argues further that the fact of the attorney's failure to interview him until the night before the trial, the fact that she interviewed him for only 30–45 minutes, and the fact that she waited until the morning of trial to move for a change of venue and a continuance also demonstrated ineffective assistance of counsel.

Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), a defendant claiming ineffective assistance of counsel must show, first, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Second, *Strickland* requires the defendant to show "that the deficient performance prejudiced the defense;" this means "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

■ The facts in this case are not complex, and we cannot say that the defense attorney's delay in interviewing her client, or the brief span of time devoted to the interview, justify our setting the conviction aside in a collateral proceeding. Even if the defense attorney's performance could somehow be found "deficient" in these respects or otherwise, it cannot be said to have prejudiced the defense, absent a showing that the result of the trial was not "reliable."

■ Counsel's failure to bring the prosecutor's alleged representation of Mrs. Robinson to the trial judge's attention is more troublesome. If the facts are as Mr. Dick claims, it is not unlikely that the prosecutor would have been disqualified had the court been informed of the outside representation. But it does not seem to us that Mr. Dick can meet the second prong of the *Strickland* test, given an apparently incontrovertible blood alcohol reading of .24. It is hard to see how the substitution of another prosecutor would have made a difference in the outcome of the trial, unless one assumes that a different prosecutor would have been more amenable to a plea bargain of some sort. That is an assumption we are not prepared to make on the record before us.

The judgment dismissing the petition for a writ of habeas corpus is AFFIRMED.

CELEBREZZE, Senior Circuit Judge, concurring in the judgment.

We are faced in this appeal with a claim by Petitioner Dick that his state-court conviction was fundamentally unfair because, during the pendency of his criminal proceedings, the prosecutor undertook to represent the victim in a civil suit against Dick.[1] Such a practice is not merely "unseemly" as the majority understates, it is an unforgivable abuse of the public trust in which the public's overriding interest in the fair operation of its criminal justice system, an interest prosecutors are sworn to uphold, see *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935), may be sacrificed in favor of the financial interest of a cynical prosecutor. As the Supreme Court has said in an analogous case involving the appointment by a federal court of an interested party's attorney to prosecute a contempt citation for the violation of an injunction:

> In short, as will generally be the case, the appointment of counsel for an interested party to bring the contempt prosecution in this case at a minimum created *opportunities* for conflicts to arise, and created at least the *appearance* of impropriety.
>
> . . . .
>
> In a case where a prosecutor represents an interested party, . . . the ethics of the legal profession *require* that an interest other than the Government's be taken into account. Given this inherent conflict in roles, there is no need to speculate whether the prosecutor will be subject to extraneous influence.

*Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 806 & 807, 107 S.Ct. 2124, 2137, 95 L.Ed.2d 740 (1987) (emphasis in original; footnotes omitted). In his separate opinion, Justice Powell agreed:

A prosecutor occupies a unique role in our criminal justice system and it is essential that he carry out his duties fairly and impartially. Where a private prosecutor appointed by a District Court also represents an interested party, the possibility that his prosecutorial judgment will be compromised is significant.

*Id.* at 826, 107 S.Ct. at 2147 (Powell, J., concurring and dissenting). A criminal justice system that operated under such pretense would engender justifiable public outrage, and would bring our already maligned legal profession into further disrepute. I have no doubt, therefore, that the state trial court would have disqualified the prosecutor had it been informed of his transgression, and that the appropriate state disciplinary authorities would roundly condemn the prosecutor's blatant ethical violation.

In reviewing a petition for writ of habeas corpus, however, we do not sit to enforce a code of ethics for prosecutors. Rather, we review state-court convictions only for constitutional error. Because I am constrained to agree with the majority that the appearance of impropriety infecting this state-court proceeding did not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, I reluctantly concur in the judgment.[2]

I write separately, however, to express my disagreement with the majority's apparent belief that a prosecutor's financial interest in a criminal proceeding will never implicate the constitutional guarantee of due process. As the Supreme Court has said:

> "A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions."

1. I agree with the majority that the state court's "fact-finding" does not deserve the presumption of correctness under 28 U.S.C. § 2254(d)(1)–(3).

2. The Supreme Court's decision in *Young*, although reversing a contempt conviction prosecuted by the attorney for an interested party, was based on the Court's supervisory powers over the federal courts, and *not* on constitutional grounds. 481 U.S. at 808–09, 107 S.Ct. at 2138. *Young* is therefore not authority on which to base a constitutional rule mandating that prosecutors avoid even an appearance of bias. *But cf. id.* at 814–15, 107 S.Ct. at 2146–47 (Blackmun, J., concurring).

*Marshall v. Jerrico, Inc.,* 446 U.S. 238, 249–50, 100 S.Ct. 1610, 1617, 64 L.Ed.2d 182 (1980); *see Young,* 481 U.S. at 807–08 & n. 19, 107 S.Ct. at 2137–38 & n. 19. In the same vein, Judge Friendly's opinion in *Wright v. United States,* 732 F.2d 1048 (2d Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 779, 83 L.Ed.2d 774 (1985), which the majority cites for other purposes but which also involved a claim of prosecutorial abuse analogous to that presented here, acknowledged that a prosecutor's financial interest might raise a constitutional question:

> In short, this case, with the facts taken at their worst against the Government, does not present the spectacle of a prosecutor's using the "awful instruments of the criminal law" for purpose of private gain and, although we consider the choice of ... prosecutor to have been ill advised, we do not regard it as having deprived Wright of due process of law.

*Id.* at 1058 (quoting *McNabb v. United States,* 318 U.S. 332, 343, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1943)). Moreover, I cannot abide the majority's suggestion that a prosecutor's pecuniary interest in a case is simply a "practical constraint" on the exercise of his discretion. *See Marshall,* 446 U.S. at 250–52, 100 S.Ct. at 1617–18 (although prosecutors not constitutionally bound to avoid the appearance of bias, the Court found it necessary as a component of its due process analysis to inquire whether the administrative prosecutors in question would personally benefit from the assessment of penalties). That a prosecutor's financial interest in a case can raise serious constitutional questions, therefore, is beyond question.[3]

Merely the appearance of impropriety, however, is insufficient. *See Young,* 481 U.S. at 807, 107 S.Ct. at 2137; *Marshall,* 446 U.S. at 248, 100 S.Ct. at 1616 (prosecutors not held to same standard of impartiality as judges). To show a constitutional violation, the criminal defendant must prove some specific instance of misbehavior, as the habeas petitioner did in *Ganger v. Peyton,* 379 F.2d 709 (4th Cir.1967). In *Ganger* the prosecutor used the criminal charge as leverage in an attempt to coerce a more favorable settlement for his private client in the pending divorce proceeding (this fact is unfortunately omitted from the majority's discussion). When the prosecutor thus explicitly acts at his private client's behest and in derogation of his public duty, the appearance of impropriety is replaced by an actual conflict likely motivated by a personal financial interest, and the conclusion that the prosecutor has "abdicated" his prosecutorial discretion to his client readily flows. *Id.* at 713–14. In such circumstances, the prosecutor's behavior does not comport with any reasonable view of the prosecutorial function, and the aggrieved defendant has been denied his constitutional right to due process of law.[4] *Id.*

In the final analysis, however, Petitioner Dick has failed to establish a comparable transgression by the prosecutor here. Thus, as in *Wright,* 732 F.2d at 1057–58, and *Jones v. Richards,* 776 F.2d 1244, 1246–47 (4th Cir.1985), the absence of specific evidence clearly showing the prosecutor's abuse of the criminal justice system for his own financial gain distinguishes this case from *Ganger.* The appearance of impropriety we find in the prosecutor's ill-advised decision to undertake the victim's civil case during the criminal proceeding, therefore, does not rise to the level of a constitutional deprivation.

With these reservations, I concur in the court's judgment.[5]

---

3. The Supreme Court's recent decision in *Morrison v. Olson,* 487 U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), casts no doubt on this proposition.

4. Whether such a constitutional violation would be subject to harmless error analysis is less clear. *Compare Young,* 481 U.S. at 809–14, 107 S.Ct. at 2138–41 (plurality opinion) *with id.* at 826–27, 107 S.Ct. at 2147–48 (Powell, J., dissenting in part). I note that such an analysis apparently informs the majority's statement that the prosecutor's motivation "may be immaterial, from a constitutional standpoint, as long as the criminal trial itself is not unfair." The majority thus further confuses the issue here by converging the due process inquiry with the question whether such a violation would mandate the grant of habeas corpus relief. The latter question is not presented by this appeal.

5. I also concur in the majority's ineffective assistance of counsel analysis.