21 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James L. BOULER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James L. BOULER, Defendant-Appellant.
 Nos. 93-5220, 93-5522.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 8, 1994.
Decided April 18, 1994.
 
 Appeals from the United States District Court for the Western District of North carolina, at Charlotte. Robert D. Potter, District Judge. (CR-92-37-CR-P)
 James Frank Wyatt, III, Charlotte, NC, for appellant.
 Gretchen C.F. Shappert, Asst. U.S. Atty. (Jerry W. Miller, U.S. Atty., Frank D. Whitney, Asst. U.S. Atty., B. Frederic Williams, Jr., Asst. U.S. Atty., on brief), Charlotte, NC, for appellee.
 W.D.N.C.
 AFFIRMED.
 Before WILKINSON, LUTTIG and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 James L. Bouler appeals his jury conviction and sentence for: 1) conspiracy to launder the proceeds of cocaine trafficking and illegal lottery operations, in violation of 18 U.S.C.Sec. 371 (1988); 2) money laundering in violation of 18 U.S.C.Sec. 1956(a)(1)(B)(i) (1988); and 3) engaging in a monetary transaction using criminally derived property in violation of 18 U.S.C. Sec. 1957(a) (1988).[1] Bouler also challenges the seizure of his property in a criminal forfeiture pursuant to 21 U.S.C. Sec. 853 (1988), and seeks to have his criminal indictment dismissed for prosecutorial impropriety. Finding no error, we affirm.
 
 I.
 
 2
 James L. Bouler is a professional golfer who owned and operated the Golf Tech Pro Shop in Monroe, North Carolina. Bouler often played in high stakes golf matches, which involved large amounts of cash. Through his golf shop Bouler became acquainted with "Pee Wee" Givens and Ned Johnson,[2] who together ran a multikilogram cocaine and illegal lottery business involving several cocaine houses. Givens and Johnson operated the conspiracy, and one of Johnson's girlfriends, Gloria Holloway, was in charge of handling and storing the large amounts of currency generated from the cocaine and lottery sales. Johnson and Holloway both testified at trial that Bouler was one of Johnson's main sources for cocaine and brought him approximately two kilograms of cocaine on a bi-weekly basis. The facts relevant to this appeal center around Bouler's relationship with Johnson's illegal operations.
 
 
 3
 The first event involved the purchase of a 1986 Mercedes Benz 560SL. Johnson told Bouler that he wished to purchase a Mercedes Benz for one of his girlfriends, Melissa George, but that he wanted Bouler to purchase the car under Bouler's name. Johnson and Bouler went to Brother's Foreign Cars to pick out the Mercedes, and Johnson gave Bouler $50,000 to purchase the car. The money consisted of proceeds from Johnson's illegal drug and gambling business. Bouler paid for the Mercedes in two installments of $21,000 and $20,000, and purchased and registered the Mercedes in his name. Bouler then gave the car to Johnson, who gave the car to George.
 
 
 4
 The next relevant event occurred on February 23, 1990, when a Charlotte police officer stopped Bouler at the airport and found $153,730.00 in cash, which the police seized under the belief that it was drug money. Bouler told the police officer that the money belonged to other people and was to be used to bet on a high stakes golf match that was subsequently cancelled. Johnson testified that Givens had given Bouler the money to purchase cocaine, but that Bouler became scared and never used the money to purchase the drugs.
 
 
 5
 The last relevant event occurred in the fall of 1991, when basketball player Michael Jordan lost $57,000 to Bouler during a high stakes golf tournament, and delivered a cashier's check for that amount. By this time Ned Johnson had pled guilty to a continuing criminal enterprise, had begun cooperating with the Government, and had made a statement to Government agents about Bouler's involvement in his and Givens's drug organization, which the agents proceeded to investigate. During the investigation, the agents intercepted a cordless tele phone conversation in which Bouler was attempting to avoid currency transaction reporting (CTR) requirements with regard to the $57,000.[3]
 
 
 6
 Prior to completing their criminal investigation of Bouler, the Government applied for a seizure warrant for the $57,000, setting forth two separate theories for civil forfeiture: first, that the money was proceeds of cocaine trafficking, and second, that Bouler was involved in illegal structuring of currency. After the seizure, Bouler filed a motion for return of property, which was granted by the district court.[4] Before the district court issued its opinion granting the return of property, the Government procured this criminal indictment against Bouler, which included a criminal forfeiture count authorizing the seizure of the $57,000 as substitute forfeitable assets. Bouler filed a motion to dismiss the indictment for prosecutorial misconduct, which the district court denied.
 
 
 7
 In October 1992, Bouler was tried on the money laundering counts involving the purchase of the Mercedes Benz, in addition to conspiracy to possess and distribute cocaine. Bouler's defense theory at trial was that Johnson and his girlfriend, Gloria Holloway, conspired to provide false testimony implicating him in the conspiracy. Bouler maintained that he met Givens and Johnson through golf and was not aware that they were in the cocaine and illegal gambling business. To prove his conspiracy theory, Bouler attempted to show Holloway's willingness to lie to the Government to protect her boyfriend, Johnson, by cross-examining her on a polygraph examination which she had failed. Holloway had been given a polygraph examination regarding her drug activities with Johnson, and the examiner concluded she was being deceptive. The district court, however, refused to allow the introduction of any evidence relating to Holloway's polygraph examination. The jury acquitted Bouler on the conspiracy to possess and distribute cocaine count, but convicted him of the money laundering charges.[5]
 
 
 8
 Bouler was sentenced to 110 months in prison. The district court enhanced Bouler's base offense by three levels pursuant to U.S.S.G. Sec. 2S1.1(b)(1) because the court found that the Government proved by a preponderance of the evidence that Bouler knew that the money he was laundering was proceeds of cocaine sales. United States Sentencing Commission, Guidelines Manual, Sec. 2S1.1(b)(1) (Nov.1992). The district court also enhanced Bouler's base offense by two levels pursuant to U.S.S.G. Sec. 2S1.1(b)(2) for laundering money in excess of $200,000.
 
 II.
 
 9
 Bouler first contends that the district court's refusal to allow defense counsel to cross-examine prosecution witness Gloria Holloway concerning her failed lie detector test violated the Confrontation Clause of the Sixth Amendment and his right to effective cross-examination. We review the decision of whether to admit polygraph evidence under an abuse of discretion standard. United States v. Webster, 639 F.2d 174, 186 (4th Cir.), cert. denied, 454 U.S. 857 (1981).
 
 
 10
 "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' " Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). The ability to cross-examine witnesses is the main and essential purpose of the right of confrontation. Id. However, the Confrontation Clause does not prevent a trial judge from limiting defense counsel's inquiry into the potential bias of a prosecution witness. "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679.
 
 
 11
 This court has previously held that the results of a polygraph examination are not admissible to impeach the credibility of a witness. See United States v. Chambers, 985 F.2d 1263, 1270 (4th Cir.), cert. denied, 114 S.Ct. 107 (1993); United States v. A & S Council Oil Co., 947 F.2d 1128, 1134 (4th Cir.1991). Nevertheless, Bouler argues that he is not offering the results of the polygraph examination for the substantive purpose of impeaching the credibility of Gloria Holloway. Bouler alleges that Holloway and the prosecution's main witness, Ned Johnson, were engaged in a conspiracy to provide false information to the Government prior to and during trial. Bouler contends that the evidence should have been admitted to show Holloway's willingness to lie even during a polygraph examination.
 
 
 12
 Indeed, Holloway admitted at trial that when first questioned by the Government, she lied to protect Johnson because she loved him, and that she became truthful later. Although Bouler draws a subtle distinction between his case and Fourth Circuit precedent--that he is offering the polygraph evidence not to impeach Holloway's testimony at trial, but to show her willingness to lie during a polygraph--we find that the district court did not abuse its discretion in refusing to admit the polygraph evidence. It is clear that the scope of permissible impeachment of a witness in a criminal trial is committed to the sound discretion of the district court, which weighs the probative value of the testimony against the possibility of unfair prejudice, confusion of the issues, or misleading the jury. See Fed.R.Evid. 403; United States v. Dominguez, 604 F.2d 304, 310 (4th Cir.1979), cert. denied, 444 U.S. 1014 (1980). The district court cited the inexact nature of polygraph testing and the possibility of such evidence confusing the jury as reasons for refusing to admit any references to polygraph examinations, and excluded all such references from the evidence submitted to the jury. For example, not only did the district court refuse to allow any testimony concerning polygraph examinations, it also redacted polygraph references in coconspirators' plea agreements so those references would not mislead the jury into believing that the testimony of Government witnesses had been verified by polygraph. We find that such limitations were within the trial judge's discretion.[6]
 
 
 13
 In addition, we note that defense counsel was allowed to fully probe Holloway's bias at trial. As the Supreme Court reasoned in Van Arsdall, 475 U.S. at 679, " 'the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish,' " (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original). Here, defense counsel extensively cross-examined Holloway on her alleged conspiracy with Johnson to fabricate testimony. The trial judge allowed defense counsel to introduce into evidence letters between Holloway and Johnson in which Holloway wrote that she was "going to stick to[her] end of the bargain." (J.A. at 539.) Defense counsel also established at trial that Holloway still loved Johnson and that she initially lied to the Government to protect him. In addition, defense counsel introduced into evidence Holloway's favorable plea agreement. The jury learned that Holloway was initially charged with 78 counts of money laundering, but pled guilty in exchange for a four-year sentence and could receive a further reduction in sentence because of her cooperation. Finally, the Government's purpose of Holloway's testimony was as a corroborating witness regarding the cocaine conspiracy, however, the jury acquitted Bouler of the cocaine conspiracy charge, which was the primary subject of Holloway's testimony. This supports the conclusion that defense counsel was able effectively to impeach her testimony.
 
 
 14
 Accordingly, we hold that the district court did not abuse its discretion in denying defense counsel the ability to cross-examine Holloway concerning her failed polygraph examination.
 
 III.
 
 15
 Bouler also challenges the sufficiency of the evidence to support his convictions. We construe the evidence in the light most favorable to the Government and consider whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 16
 The jury convicted Bouler of one count of conspiracy to launder the proceeds of cocaine trafficking and illegal gambling; two counts of laundering cocaine and gambling proceeds through the purchase of the Mercedes Benz; and two counts of engaging in a monetary transaction using criminally derived property through the purchase of the Mercedes.
 
 
 17
 To sustain a conviction for conspiracy, the Government must have proven at trial: 1) that a conspiracy existed; 2) that the defendant had knowledge of the conspiracy; and 3) that the defendant voluntarily became a part of the conspiracy. United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992). "[T]he existence of a conspiratorial agreement need not be proven by direct evidence, but may be inferred from the facts and circumstances of the case, i.e., circumstances indicating that two or more people acted in concert to achieve an illegal goal." United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir.), cert. denied, 447 U.S. 925 (1980).
 
 
 18
 To support a conviction for money laundering under 18 U.S.C. Sec. 1956(a)(1)(B)(i) the Government must have proven: 1) that defendant conducted a financial transaction affecting interstate commerce which involved the proceeds of specified unlawful activity; 2) that defendant did so knowing that the transaction was designed in whole or in part to disguise the nature, the source, the ownership or the control of the proceeds; and 3) that the defendant knew that the property involved in the transaction was derived from unlawful activity. United States v. Baker, 985 F.2d 1248, 1252 (4th Cir.1993), cert. denied, 114 S.Ct. 682 (1994). To sustain a conviction for 18 U.S.C. Sec. 1957(a) the Government must have proven: 1) that the defendant knowingly engaged or attempted to engage in a monetary transaction involving criminally derived property valued in excess of $10,000.00; and 2) that the property was in fact derived from specified unlawful activity. See 18 U.S.C. Sec. 1957(a).
 
 
 19
 Viewing all the evidence in the light most favorable to the Government, Ned Johnson's testimony alone is sufficient to sustain all of Bouler's convictions. Johnson testified that he and his partner, "Pee Wee" Givens, ran a multikilogram cocaine distribution ring and illegal lottery business, in which Bouler actively participated, in Charlotte, North Carolina, for approximately three years. Johnson testified that Bouler frequently handled large sums of cash to purchase cocaine or property such as the Mercedes Benz, and that when Johnson decided to purchase a Mercedes for one of his girlfriends, he asked Bouler to buy the car because Bouler had a reputation for concealing assets for drug traffickers. Johnson testified that Bouler knew that he sold drugs and ran an illegal lottery because Bouler had been one of his suppliers. Johnson also testified about the specifics of the purchase of the Mercedes Benz. Johnson said that Bouler went to Brother's Foreign Cars with him to pick out the car, and handled the entire transaction. Bouler told the salesman that he was purchasing the Mercedes for his brother, signed all of the sales documents, had the car titled in his name, and drove it off the dealer's lot. From this testimony, the jury could have easily inferred that Bouler conspired with Johnson to use drug and illegal gambling money to purchase the Mercedes Benz with the purpose of concealing the source of the money.
 
 
 20
 In addition to Johnson's testimony, the Government introduced 38 other witnesses. The Government called a series of witnesses to testify about Bouler's cocaine trafficking. Although the jury acquitted Bouler of the cocaine conspiracy, this testimony was relevant to Bouler's knowledge that he was laundering cocaine proceeds. See United States v. Campbell, 977 F.2d 854, 858 (4th Cir.1992) (holding there was sufficient evidence to convict defendant of money laundering if defendant was aware that the person with whom she was transacting was a drug dealer), cert. denied, 113 S.Ct. 1331 (1993). Moreover, a number of witnesses testified that they saw Bouler picking up or delivering drugs at Johnson and Givens's various drug houses. One witness testified that he went with Givens to Bouler's house in Monroe, North Carolina, to pick up six ounces of cocaine. The Government also introduced the testimony of a salesman and the sales manager at Brother's Foreign Cars to corroborate Johnson's tes timony about the Mercedes sale. Those witnesses confirmed that Bouler met Johnson at the dealership, that Bouler said he was purchasing the car for his brother, and that Bouler paid for the car in cash. Bouler himself testified that he paid for the car in two separate cash transactions, one for $21,000 and one for $20,000. Thus, there was clearly enough evidence to support Bouler's convictions.
 
 IV.
 
 21
 Bouler's next contention is that the district court should have dismissed the indictment against him because of prosecutorial impropriety. We review the district court's decision denying Bouler's motion under an abuse of discretion standard. See United States v. Greenwood, 796 F.2d 49, 52 (4th Cir.1986). Bouler alleges that the Government brought this criminal indictment to obtain the $57,000 cashier's check given to him by Michael Jordan. The Government initially seized the check pursuant to a civil forfeiture statute before charging Bouler with any criminal acts, but a district court judge ordered the check released after Bouler had been indicted. Bouler contends that the prosecutor, upset that the check had been returned, brought criminal charges against him merely to acquire the $57,000 cashier's check. Bouler further argues that the prosecutor's ulterior motive to bring the criminal cause of action to obtain the $57,000 cashier's check creates an appearance of impropriety, and thus, the due process clause does not allow the Government to prosecute him for these criminal acts. We find Bouler's claim completely without merit.
 
 
 22
 The decision whether or not to prosecute, and the charges that should be filed or brought before the grand jury are generally within the sole discretion of the prosecutor. Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). That discretion is only curtailed if the defendant is able to show an improper prosecutorial motive, such as charges being brought in retaliation for the defendant's exercise of a constitutional right. See United States v. Goodwin, 457 U.S. 368, 375 (1982). In this case, Bouler has submitted no evidence of an improper motive on the part of the prosecutor to bring criminal charges to acquire the $57,000 cashier's check.
 
 
 23
 Moreover, Bouler has not even established a presumption of an improper motive. To establish a presumption of an improper motive based on a sequence of events, the defendant must show that some detrimental action was taken against him after he exercised a constitutional right. See North Carolina v. Pearce, 395 U.S. 711, 724-25 (1969). Because of the severity of such a presumption, however, courts should only presume an improper motive in cases in which a reasonable likelihood of vindictiveness exists. Goodwin, 457 U.S. at 381. In this case, Bouler was already under criminal investigation before the Government learned of the $57,000. The mere fact that the Government chose to bring an ultimately unsuccessful civil forfeiture action prior to obtaining a criminal indictment does not establish a presumption of any improper motive on behalf of the prosecutor.[7] Thus, we find that the district court correctly denied Bouler's motion to dismiss the criminal indictment and, accordingly, the $57,000 cashier's check is properly subject to criminal forfeiture.
 
 V.
 
 24
 Finally, Bouler challenges the district court's enhancement of his sentence for laundering proceeds of controlled substances pursuant to U.S.S.G. Sec. 2S1.1(b)(1), and for laundering in excess of $200,000 in funds pursuant to U.S.S.G. Sec. 2S1.1(b)(2). Because these determinations involve factual findings of the district court, we review the enhancements under a clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989).
 
 
 25
 Section 2S1.1(b)(1) provides, "[i]f the defendant knew of or believed that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances, increase by 3 levels." Bouler argues that because the jury acquitted him of the cocaine conspiracy, the evidence was insufficient for the district court to enhance his sentence for laundering cocaine proceeds. We disagree. First, Bouler was convicted of money laundering in violation of 18 U.S.C. Sec. 1956(a)(1)(B)(i), under which one of the elements is a finding that the defendant knew the property involved in the transaction was derived from unlawful activity. Because the jury convicted Bouler of money laundering, it must have concluded that Bouler knew the funds he was handling came from illegal activity, which the evidence at trial proved to be illegal drug sales and gambling activities. Thus, a preponderance of the evidence shows that Bouler knew or believed that the funds he was handling were derived from drug sales. Accordingly, we find that the district court was not clearly erroneous in enhancing Bouler's sentence pursuant to Sec. 2S1.1(b)(1).
 
 
 26
 Bouler also contests the enhancement pursuant toSec. 2S1.1(b)(2), which provides for a two level enhancement if the amount of money laundered exceeded $200,000. Specifically, Bouler contends that the $153,730.00 seized at the airport should not have been included in the amount. Because there was sufficient testimony to conclude by a preponderance of evidence that the money seized at the airport was intended to be used for the purchase of drugs,[8] we also find that the district court was not clearly erroneous in enhancing Bouler's sentence pursuant to Sec. 2S1.1(b)(2).
 
 VI.
 
 27
 For the aforementioned reasons, we affirm Bouler's conviction and sentence.
 
 AFFIRMED
 
 
 [1]
 Although Bouler was charged with conspiracy to possess and distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1) (1988), the jury acquitted him on that count
 
 
 [2]
 Johnson is currently serving a twenty year sentence for cocaine conspiracy. Although Johnson testified at trial regarding these events, Givens died of a gunshot wound before Bouler's indictment
 
 
 [3]
 A domestic financial institution must file a CTR when it is involved in a transaction of domestic currency for an amount more than $10,000. See 31 U.S.C. Sec. 5313 (1988); 31 C.F.R.Sec. 103.22 (1993). A person violates Sec. 5313 when he causes or attempts to cause a domestic financial institution to fail to file a currency transaction report. See 31 U.S.C.A. Sec. 5324 (Supp.1993). Bouler was neither indicted nor prosecuted for violating Sec. 5313
 
 
 [4]
 The district court's grant of Bouler's motion for return of property is the subject of another appeal before this court. See United States v. $57,000 in NCNB Nat'l Bank, No. 92-1817 (4th Cir. argued Feb. 8, 1994)
 
 
 [5]
 The jury also convicted Bouler of one count of possessing a firearm while being a convicted felon pursuant to 18 U.S.C.Sec. 922(g)(1) (1988), which Bouler has not challenged on appeal
 
 
 [6]
 Bouler cites Davis v. Alaska, 415 U.S. 308 (1974), in support of his position. In Davis, the Court held that a defendant's right of confrontation was violated when the trial judge refused to allow defense counsel to cross-examine a key prosecution witness concerning his burglary conviction and his probationary status at the time of trial. Id. at 318. However, Davis is easily distinguishable from the case at issue, because here, the trial judge allowed extensive cross-examination on Holloway's propensity to lie
 
 
 [7]
 The cases which Bouler cites in support of his claim of prosecutorial vindictiveness are easily distinguished from this case because they all involve situations in which there was actual evidence of bias or interest on the part of the prosecutor. See Young v. United States, 481 U.S. 787, 810 (1987) (holding that it is inappropriate to appoint an interested party's counsel to be a special prosecutor for a criminal contempt case); United States ex rel. SEC v. Carter, 907 F.2d 484, 486-88 (5th Cir.1990) (SEC attorneys could not prosecute a criminal contempt charge when the SEC had been the named plaintiff in the original action.); Ganger v. Peyton, 379 F.2d 709, 711 (4th Cir.1967) (holding a conviction invalid when the court discovered that the state prosecuting attorney represented the defendant's wife in her divorce action)
 
 
 [8]
 Johnson testified at trial that Givens had given Bouler the money to purchase cocaine, but Bouler became scared and failed to purchase the drugs as planned