particularly in view of the fact that one of the petitioner's codefendants was acquitted and the other received probation.

Even more inexcusable is the failure of the trial court to have taken the time before commencing a first degree murder trial to inquire effectively into the circumstances, and to have ensured that the petitioner's counsel was reasonably well prepared to defend his client. The trial court's failure, in the face of the petitioner's unanswered claims of lack of contact with his attorney and the lawyer's eve-of-trial suspension from practice, to grant a short continuance is, in a word, incomprehensible. The compulsion to maintain a tidy docket should never, as it so clearly did here, place fundamental rights at risk. Would a week's delay have really mattered?

The message of this case is not that federal courts are quick to intervene into state proceedings; the message is, rather, that the state trial court in this case could and should have done a better job of upholding the Constitution. Had it taken but a few moments to consider the petitioner's complaints meaningfully, or had it postponed the trial for a brief period to make certain that Evelyn was truly ready for trial, this case would not be here. The time the trial court may have saved has led to a great and otherwise unnecessary expenditure of time on the part of the Michigan courts of review, the district court, and this court.

Nonetheless, even though the petitioner was not afforded the kind and quality of representation prior to his trial that he deserved -- and every defendant deserves -- he failed to meet his burden of showing prejudice. His conviction should, accordingly, be affirmed. I, therefore, respectfully dissent.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0217P (6th Cir.)
File Name: 01a0217p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CHARLIE LEE MITCHELL,
        *Petitioner-Appellee,*

        *v.*                                    No. 99-1839

WARDEN GERALD MASON,
        *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-71338—Arthur J. Tarnow, District Judge.

Argued: December 1, 2000

Decided and Filed: July 12, 2001

Before: DAUGHTREY and MOORE, Circuit Judges;
CARR, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Jeffrey W. Caminsky, COUNTY OF WAYNE PROSECUTOR'S OFFICE, Detroit, Michigan, for Appellant. Rolf E. Berg, STATE APPELLATE DEFENDER'S OFFICE,

_____

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

Detroit, Michigan, for Appellee. **ON BRIEF:** Jeffrey W. Caminsky, COUNTY OF WAYNE PROSECUTOR'S OFFICE, Detroit, Michigan, for Appellant. Rolf E. Berg, STATE APPELLATE DEFENDER'S OFFICE, Detroit, Michigan, for Appellee.

MOORE, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. CARR, D. J. (pp. 34-44), delivered a separate dissenting opinion.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. Petitioner-Appellee Charlie Lee Mitchell ("Mitchell") was convicted in a Michigan state court of second-degree murder and sentenced to a term of ten to fifteen years' imprisonment. Throughout his six-month confinement in custody awaiting trial, Mitchell sought to have new counsel appointed to his case because he claimed that his court-appointed lawyer refused to meet with him. Mitchell's motion to replace his counsel was addressed by the state trial court on the second day of jury selection and was subsequently denied. On direct appeal, Mitchell raised a claim of ineffective assistance of counsel, which was rejected by the Michigan Court of Appeals and then the Michigan Supreme Court. Having exhausted his state remedies, Mitchell filed an application for a writ of habeas corpus in federal district court in the Eastern District of Michigan, which granted Mitchell's habeas petition. We believe that Mitchell's petition for habeas relief must be granted because the Michigan Supreme Court unreasonably applied clearly established Supreme Court precedent in its review of Mitchell's claim. Therefore, we **AFFIRM** the district court's order.

petitioner, and what effect would such knowledge have had on the outcome of the trial. Without answers somewhere in the record to those questions, the petitioner cannot prevail.

For reasons that are not explained in and cannot be deduced from the record, neither the petitioner nor Evelyn testified at the *Ginther* hearing.[4] As a result, no evidence was developed at that hearing with regard to the determinative issues in this case. Consequently, the petitioner failed to carry his burden of showing that he was prejudiced as a result of his lawyer's failure to have fulfilled his duty of consulting with him prior to his trial.

### Conclusion

The district court erred when it concluded that the petitioner was entitled to relief because his communications with counsel were not private. The Michigan Supreme Court erred when it concluded that the petitioner was not deprived of his right to effective assistance of counsel when his lawyer failed to consult with him in any meaningful way prior to his trial. But that court correctly held that the petitioner was not entitled to relief because he failed to show prejudice from his lawyer's manifest incompetence.

That being said, I acknowledge that this is a close case. While I disagree with the majority's view that its outcome is controlled by *Cronic*, rather than *Strickland*, it is hard to fault the impulse, which, in candor, I share, to find that the facts compel reversal. Evelyn's conduct appears inexcusable,

———————————

[4]Contrary to the Warden's argument, I do not find that petitioner's failure to call Evelyn at the *Ginther* hearing waived his claim of ineffective assistance of counsel. I do not, moreover, read the opinion of the Michigan Supreme Court as holding that claims of ineffective assistance will be deemed defaulted whenever a petitioner, though able to do so, fails to call his former attorney at a *Ginther* hearing. That opinion, and my dissent, underscore, however, the risks that a petitioner runs when he foregoes calling his former counsel, especially where the determinative issue is what the lawyer knew and did with that knowledge before the trial began.

Other circuits likewise apply *Strickland*, rather than *Cronic*, where counsel has failed to fulfill his duty to consult with his client prior to trial. *Harris By and Through Ramseyer v. Wood*, 64 F.3d 1432, 1435 (9th Cir. 1995) (applying *Strickland* where, among other failings, counsel's pretrial meetings with petitioner lasted less than a total of two hours; the state conceded that such constituted deficient assistance of counsel); *United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1013 (7th Cir. 1987) (applying *Strickland* to ineffective assistance claim based, inter alia, on failure to meet with the petitioner except on brief occasions in a jail bullpen).[3]

I agree with the Michigan Supreme Court's conclusion that the petitioner failed to meet his burden of showing prejudice. The four witnesses called at that hearing failed to shed any light on the critical questions that arose as a result of Evelyn's failure to consult with the petitioner: namely, what did Evelyn know about the case as the trial began, what more could he have learned through adequate consultation with the

---

[3]Even if we properly could disregard *Dick*, I would nonetheless conclude that *Strickland*, rather than *Cronic*, is the proper standard. Although the failure to meet with one's client appears inexplicable and unjustifiable, it does not, as required by *Cronic*, present "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. Claims of ineffectiveness based on the failure of counsel to perform his or her duties adequately prior to trial are routinely litigated in state and federal courts. Nor can I conclude, as required under *Cronic*, that Evelyn "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing," or was "prevented from assisting the accused during a critical stage of the proceeding." *Id.* Nor does the failure to meet with one's client prior to trial automatically make "the likelihood that counsel [can perform] as an effective adversary . . . so remote as to [make] the trial inherently unfair." *Id.* at 661.

Here, though Evelyn failed to assist the petitioner during a critical stage of the proceeding, he was not prevented from doing so by the trial court or any other external agency. Though his challenge to the state's case may have been more effective had he taken the time to learn what he could from the petitioner, he nonetheless subjected the state's case to meaningful challenge, as shown by the reduction, on his motion, of the charge from first to second degree murder.

## I.  JURISDICTION

We have jurisdiction to hear Warden Mason's appeal from the district court's grant of Mitchell's petition for habeas corpus under 28 U.S.C. § 2253.

## II.  BACKGROUND

Charlie Lee Mitchell was arrested and charged with first-degree murder for the death of Raymond Harlin, who was killed after a fight broke out in Mitchell's kitchen on October 3, 1988.[1]  On October 6, 1988, Gerald K. Evelyn was appointed counsel for Mitchell. Evelyn represented Mitchell at a preliminary examination on October 14, 1988, during which he called one witness and argued against the denial of bail. Evelyn next represented Mitchell, close to four months later, at the final conference on February 3, 1989. On April 5, 1989, Evelyn was suspended from practicing law in the State of Michigan.[2]  He was reinstated on May 8, 1989, the day jury selection began for Mitchell's trial.

According to the facts offered at trial by the prosecution, Mitchell was the leader of a drug-trafficking ring and his Detroit apartment served as a wholesale warehouse for several street-level sellers who sold drugs in the lobby of the building. Harlin, the deceased, allegedly worked for Mitchell as a drug seller. The prosecution's theory was that Mitchell directed the events that took place in his apartment surrounding Harlin's murder. On the night in question, Mitchell, Harlin, co-defendant Antonio Moore, and several others were present in Mitchell's apartment around 10:00 p.m. According to trial testimony, a fight broke out between

---

[1]The facts of the murder are set out in full in the Michigan Supreme Court's opinion, *see People v. Mitchell*, 560 N.W.2d 600 (Mich. 1997), and are summarized in this opinion.

[2]The record does not indicate why Evelyn was suspended.

Moore and Harlin in Mitchell's kitchen.[3]  The only reason offered at trial for the start of the fight was that Moore did not like the way Harlin was looking at him.  After the fight began, Tyrone Thompson and another individual arrived. Thompson, who was the prosecution's principal witness, testified that when he arrived at the apartment he saw a gun in plain view on the windowsill and that he took it for fear that Mitchell would use it to shoot Harlin.  Thompson also testified that Mitchell said "shoot a hole in his [Harlin's] heart" and thereby ordered the killing.  Soon thereafter, co-defendant Lamont Mason and Nehemiah Anderson arrived at the apartment.  Mason was another drug seller and Anderson had come to purchase drugs.  Thompson testified that by the time Mason and Anderson arrived, he thought the situation had calmed down so he put the gun down.  At that point, Mason then picked up the gun and shot Harlin in the neck and back.[4]

Mitchell, Mason, and Moore were all charged with first-degree murder.  Separate juries heard Mitchell's and Mason's cases, while Moore opted for a bench trial.  Mason, the alleged killer, was acquitted at trial.  Moore, who was the primary aggressor in Harlin's beating, received probation for his conviction on felonious assault.

At Mitchell's trial, Evelyn did not present an opening argument.  Mitchell did not testify, nor did Evelyn present any witnesses on Mitchell's behalf.  At the close of the prosecution's case, Evelyn moved for a directed verdict.  The court partially granted the motion by reducing the charge to second-degree murder.  During closing arguments, Evelyn

---

[3] Moore beat Harlin with his fists, a blackjack, brass knuckles, a baseball bat, and a woodcarving knife.  Mitchell also hit Harlin with his fists.

[4] There is no explanation in the Michigan Supreme Court's opinion how Mitchell could have ordered the killing prior to the killer's arrival at Mitchell's apartment.  *See Mitchell*, 560 N.W.2d at 616-17 (Mallett, C.J., dissenting).

with his client a sufficient length of time before the trial to enable counsel to learn the facts, interview any witnesses whose testimony might be helpful, consider the wisest course of action, and explain this to the client. Usually the failure to do so until less than half an hour before the time set for the trial would amount to inadequate representation.").

There can be little doubt, accordingly, that, as a matter of fundamental Sixth Amendment jurisprudence, as consistently declared by the United States Supreme Court and lower federal courts, pretrial consultation between an attorney and his or her client "should be sufficient to determine all legally relevant information known to the defendant." *Tucker*, 716 F.2d at 581. In a word, the principle that failure to consult with one's client prior to trial violates the Sixth Amendment is not "'debatable among reasonable jurists.'" *Nevers v. Killinger*, 169 F.3d 352, 362 (6th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). To the extent, therefore, that the Michigan courts concluded that the petitioner had not shown that his Evelyn's performance fell below constitutional norms, their decisions were "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

### III. Petitioner Failed to Show Prejudice

The Michigan Supreme Court concluded that the petitioner was required to show prejudice in order to obtain relief on his claim of ineffective assistance of counsel. 560 N.W.2d at 610. As noted, that court expressly rejected the contention that the per se rule of *Cronic*, on which the majority bases its decision, was applicable. *Id*. at 608.

This court has held that a habeas petitioner must show prejudice where, as in this case, the only meaningful contact between the petitioner and his lawyer occurred on the eve of trial. *Dick v. Scroggy*, 882 F.2d 192, 197 (6th Cir. 1989) (applying *Strickland* to a claim that a lawyer's only pretrial interview occurred on the night before trial, and lasted only thirty to forty-five minutes).

crowded bullpen; "The cornerstones of effective assistance of counsel are the informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of the client's case. Adequate consultation between the attorney and the client is an essential element of competent representation of a criminal defendant.").

Federal courts had reached the same conclusion prior to *Strickland. See, e.g.*, *United States v. Tucker*, 716 F.2d 576, 584 (9th Cir. 1983) (counsel "failed to prepare his client's defense competently under the most tolerant standard of evaluation" where he, inter alia, "failed to obtain legally relevant facts from his client;. . . ."); *United States v. Decoster*, 624 F.2d 196, 209 (D.C. Cir. 1976) ("Realistically, a defense attorney develops his case in large part from information supplied by his client."); *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir.1968) ("Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable."); *Maynor v. Green*, 547 F. Supp. 264, 267 (S.D. Ga., 1982) ("the duty to consult is designed to insure that a defendant's counsel fulfills two basic functions: an investigative function and an informative function"; "consultation is a particularly useful method of pretrial investigation. Where there is little or no consultation, and it is apparent that consultation could have led to information that would have affected counsel's decision-making process, effective assistance of counsel is denied."); *Gaines v. Hopper*, 430 F. Supp. 1173, 1178 (M.D. Ga. 1977) ("Effective representation further requires that the lawyer discuss the results of his investigation with his client, explain the legal consequences of it, and consult with the client on possible approaches to the case so that the client has some reasonable understanding of his situation."), *aff'd,* 575 F.2d 1147, 1149-50 (5th Cir. 1978) ("Informed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel."); *Turner v. State of Maryland*, 206 F. Supp. 111, 114 (D. Md. 1962) *aff'd*, 318 F.2d 852 (4th Cir.1963) ("Counsel should consult

argued that Thompson's testimony was equivocal and that the prosecution had not carried its burden of proof. The jury convicted Mitchell of second-degree murder on May 17, 1989. Mitchell was sentenced by the trial judge to ten to twelve years' imprisonment and then resentenced to ten to fifteen years' imprisonment due to a miscalculation in his original sentence.

Prior to the trial, Mitchell wrote six separate letters to the trial judge, the chief judge, and others requesting new counsel. Mitchell alleged that Evelyn had not visited him once in prison nor had he had the opportunity to speak with his lawyer in court. On April 27, 1989, eleven days before jury selection was to begin, the trial court held a hearing on Mitchell's "Motion for Withdrawal of Counsel" at which Mitchell appeared on his own behalf. Evelyn did not appear for the hearing, although he had notice of it. At the hearing, Mitchell informed the court that he had received a letter from his counsel informing him that he was suspended for a month. He also asked for a new lawyer and a postponement of the trial to afford a new lawyer the chance to review his case. Because Evelyn was not present, the trial court held the motion under advisement.

On the second day of jury selection, May 9, 1989, Mitchell again renewed his motion for new counsel. At that point, Evelyn, who had been reinstated the day before, informed the court that Mitchell wanted him removed because he had failed to visit him the night before in prison as promised. The district court denied Mitchell's motion without prejudice.

On May 15, 1989, the sixth day of trial, Evelyn informed the court that he had received a grievance letter filed by Mitchell with the Attorney Grievance Commission on May 1, 1989. He then offered to have himself removed from the case. In response to questions from the court, Mitchell then stated: "I would like to, you know, cancel that grievance, you know, because all the motions and everything that I requested have been answered. . . . I'm satisfied, your Honor." J.A. at 192.

Mitchell filed an appeal as of right in the Michigan Court of Appeals challenging his conviction and sentence. In his appeal, Mitchell raised eight issues, including a claim that the trial court erred by failing to appoint substitute counsel. Mitchell also requested a remand for the purposes of holding an evidentiary hearing, known as a *Ginther* hearing, on the effective assistance of his trial counsel. *See People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). The Court of Appeals remanded to allow Mitchell a *Ginther* hearing.

At the hearing, which occurred before the same judge who had presided over the trial, Mitchell presented the testimony of four witnesses, including Mitchell's mother. Mitchell himself also testified. Mitchell's appellate counsel did not call his trial counsel, Evelyn, to the stand. Appellate counsel introduced two witnesses who had been present at Mitchell's apartment on the night of Harlin's murder to establish that they were material witnesses and that Evelyn neither contacted them nor called them to testify at trial. Mrs. Mitchell's testimony was offered to establish her numerous efforts to contact Evelyn and to inform him that there were other witnesses whom he should interview. Mitchell also testified to his efforts to contact Evelyn and discuss his case with his lawyer. After the hearing, the trial judge found that Mitchell had not demonstrated objective unreasonableness or prejudice as required by state law and that he had received effective assistance of counsel.

The Michigan Court of Appeals upheld Mitchell's conviction in a per curiam decision. *See People v. Mitchell*, No. 118832 (Mich. Ct. App. January 5, 1994). J.A. at 105.

The Michigan Supreme Court granted Mitchell leave to file an appeal on two issues, only one of which is relevant to this case: whether defendant was denied his right to counsel or effective assistance of counsel. On March 25, 1997, the Michigan Supreme Court affirmed Mitchell's conviction: three Justices voted to uphold Mitchell's conviction, two abstained, and two dissented. *People v. Mitchell*, 560 N.W.2d 600, 602 (Mich. 1997). On Mitchell's ineffective assistance

counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Id*. at 691.

Since the *Strickland* decision, lower federal courts have consistently emphasized the relationship between adequate pretrial consultation and the Sixth Amendment right to counsel. *See*, *e.g.*, *Turner v. Duncan*, 158 F.3d 449, 457 (9th Cir. 1998) ("Counsel's admission that he spent at most forty-five minutes with Turner prior to trial demonstrates deficient performance . . . [and is] especially shocking in light of the seriousness of the charges"; the "failure to adequately consult with and prepare his client to testify did not meet the standard of competent representation."); *Noland v. French*, 134 F.3d 208, 218 (4th Cir. 1998) ("Counsel has a duty to keep her client informed of important developments in the trial and 'to consult with the defendant on important decisions.") (*quoting Strickland*); *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991) ("Defense counsel must do his utmost to bring his legal acumen to bear on behalf of the defendant; keep the defendant fully informed of developments in the case and consult with the defendant on all major decisions to be made;. . . ."); *Harris By and Through Ramseyer v. Blodgett*, 853 F. Supp. 1239, 1258-59 (W.D. Wash.1994), *aff'd sub nom. Harris By and Through Ramseyer v. Wood*, 64 F.3d 1432 (9th Cir. 1995) (record showed that defense counsel met with defendant for less than two hours prior to capital trial; "Counsel's failure to adequately consult with his client fell below the objective standard of reasonableness and amounted to a deficient performance."); *United States ex rel. Cross v. DeRobertis*, 661 F. Supp. 683, 691-92 (N.D. Ill. 1986), *rev'd and remanded on other grounds*, 811 F.2d 1008 (7th Cir. 1987) (citations omitted) (representation inadequate where brief meetings between counsel and clients occurred only in

Michigan courts could have evaluated the adequacy of Evelyn's representation. This aspect of the decision by the Michigan Supreme Court is, accordingly, "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 United States § 2254(d)(2).

The Michigan Supreme Court also erred in its determination that Evelyn's performance was not objectively unreasonable. 560 N.W.2d at 610. The principle that failure to consult with a defendant prior to trial constitutes deficient representation is well embedded in Sixth Amendment jurisprudence, and was expressly endorsed by the Supreme Court in *Strickland*. In that case, the Court, in addition to fashioning the standard for evaluating the constitutional sufficiency of an attorney's performance, stated that a defendant's attorney has "the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."

The Court in *Strickland* further elaborated on the crucial importance of adequate consultation between a defendant and his lawyer:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful,

of counsel claims, the Michigan Supreme Court first found that Evelyn's suspension did not constitute a "per se" denial of counsel during a critical stage of the proceedings under *United States v. Cronic*, 466 U.S. 648 (1984). That court rejected Mitchell's contention that his case warranted a presumptive finding of ineffectiveness under the Sixth Amendment, concluding that Mitchell's claim presented neither a circumstance in which it was unlikely that any lawyer could provide effective assistance of counsel, a constructive denial of counsel, nor an unconstitutional failure to grant a continuance. *See Mitchell*, 560 N.W.2d at 607-08.

According to the Michigan Supreme Court, Mitchell's claims related to his lawyer's inadequate preparation and were therefore more properly analyzed under the *Strickland v. Washington*, 466 U.S. 668 (1984), standard for ineffective assistance of counsel, which requires deficient performance and a showing of prejudice. The court found that because Mitchell had not adequately developed a record at the *Ginther* hearing "regarding what Mr. Evelyn did or did not do, or whether Mr. Evelyn knew of the alleged eyewitnesses," there was "no factual basis for a conclusion that counsel's performance was constitutionally deficient." *Mitchell*, 560 N.W.2d at 609. Without an adequate record, Evelyn's failure to call the witnesses was presumed to be trial strategy. *Id.* Accordingly, the court found that Mitchell could not prove either element of the *Strickland* test. *Id.* at 610. The court concluded that "[a]n inference of constitutional ineffectiveness cannot be established on the basis of the 'circumstance' of counsel's thirty-day suspension during seven months of representation, without any inquiry into the conduct of the trial or any record being developed regarding counsel's actual preparedness and its effect on the result." *Id.* at 613.

Finally, on Mitchell's ineffective assistance of appellate counsel claim based on appellate counsel's failure to call the trial counsel as a witness at the *Ginther* hearing, the Michigan Supreme Court held that appellate counsel was not ineffective because his decision not to call the trial counsel was

"obvious[ly] strategic" and therefore constitutionally sufficient. *Id.*

Two Justices dissented, finding that Evelyn's performance was "per se" ineffective under *United States v. Cronic*, 466 U.S. 648 (1984), and *Geders v. United States*, 425 U.S. 80 (1976), because of a confluence of factors, including: Evelyn's suspension, rendering him completely unavailable for thirty days during the critical stage of pre-trial investigation; the fact that Evelyn failed to hold a private meeting with the defendant during the seven-month period of his representation; and the gravity of the first-degree murder charge against Mitchell. *See Mitchell*, 560 N.W.2d at 621-22. The dissent concluded that the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance of counsel that Mitchell was constructively denied counsel.[5]

On March 25, 1998, Mitchell filed a petition for habeas corpus relief with the district court under 28 U.S.C. § 2254. Mitchell asserted three grounds for habeas relief: first, that the trial court violated his right to counsel by failing to appoint new counsel, or grant a continuance, when the judge was informed eleven days prior to trial that counsel had not interviewed him and was suspended from the practice of law up to the start of trial; second, that trial counsel's failure to interview or call three witnesses who would have given favorable testimony constituted ineffective assistance of counsel; and third, that appellate counsel was ineffective.

---

[5]The dissent noted that while "Evelyn might be a very gifted trial lawyer who knows full well the 'rules of the game,' this cannot excuse the total lack of preparation. Defending a person in a first-degree murder trial is not a game. Effective representation must mean more than showing up and giving a good performance. If truth seeking is to play some role in our criminal justice system, defense attorneys must exert at least some effort to explore the truth so that, if there is exculpatory evidence available in favor of their client, they can present it." *Mitchell*, 560 N.W.2d at 622 n.7.

habeas corpus relief to the petitioner on the basis that the petitioner was unable to confer privately with his attorney, was, accordingly, improper.

## II. Defense Counsel's Performance Fell Below Constitutional Norms

Although the district court erred by applying a rule of law that has not been adopted by the Supreme Court, its decision can also be read as being based on the prejudicial effect of Evelyn's failure to have consulted with the petitioner in a meaningful and constitutionally adequate way. To the extent that the district court concluded that Evelyn's conduct in that regard fell below constitutional norms, I agree with the majority. I disagree with the conclusion of the district court and the majority, however, that the petitioner need not show he was prejudiced by his lawyer's failure to have consulted with him adequately prior to trial.

There is no significant dispute between the parties about the number, extent, or substance of the pretrial contacts between the petitioner and his lawyer. Petitioner asserted that Evelyn met with him on only three brief occasions prior to commencement of voir dire; Evelyn stated that the petitioner may have missed one meeting, and that he had "talked" with his client " on numerous occasions."

In addition, the petitioner repeatedly asserted that nothing of substance was discussed during those three or four sessions, and that Evelyn never talked to him about his case before voir dire began. Evelyn's conclusory assertion that he and the petitioner "talked on numerous occasions" is simply not responsive to the petitioner's specific contentions about the lack of substantive conversation about his case.

The Michigan Supreme Court erred, therefore, in its finding that there was "no factual basis for a conclusion that counsel's performance was constitutionally deficient . . . ." 560 N.W.2d 609. Because petitioner's contention about the number and content of his meetings with his lawyer was in the record and uncontroverted, there was a factual basis on which the

Congress has limited the circumstances in which habeas corpus relief can be granted:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As this court's decision in *Lakin* makes clear, there is no precedent in this Circuit, much less precedent emanating from the United States Supreme Court, that holds that the Sixth Amendment is violated whenever a communication -- no matter how confidential in fact -- between a lawyer and his or her client takes place in the presence of other persons.[2] The district court's decision impermissibly extended constitutional doctrine in violation of 28 U.S.C. § 2254(d). Its grant of

---

available for private counsel and accused in jails, prisons, courthouses, and other places where accused persons must confer with counsel." ABA Standards for Criminal Justice, The Defense Function, Standard 4-3.1(c). While the opportunity to confer outside the presence – and not just outside of the hearing – of other persons is clearly conducive to a meaningful attorney-client relationship and effective communication, the ABA Standard states a desired goal, not a constitutional norm.

[2] If the Sixth Amendment were violated by the mere physical presence of other persons while a lawyer and client were conversing confidentially, every discussion between counsel and client during trial could occur only if the courtroom were cleared, or a recess were taken.

---

The state argued in its response that Mitchell had procedurally defaulted his right to challenge the adequacy of his counsel because he failed to call his trial counsel at the *Ginther* hearing and otherwise failed to make an adequate record to support his claims; that the district court was bound by the state court's factual determination that none of the witnesses called at the *Ginther* hearing would have affected the result of the trial and that, without trial counsel's testimony, Mitchell could not rebut these findings; and, finally, that declaring defense counsel ineffective per se for a thirty-day suspension would be a new constitutional rule and thus unavailable to Mitchell.

The district court applied the standard of review the Sixth Circuit had developed in *Nevers v. Killinger*, 169 F.3d 352 (6th Cir. 1999), prior to the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495 (2000). The district court found that the facts indicated that "[f]rom the delivery of discovery materials to Mr. Mitchell until the time of trial, a period of approximately six months, the attorney never communicated with his client." J.A. at 35. Relying on *Geders v. United States*, 425 U.S. 80 (1976), the district court concluded that "[p]retrial preparation is a critical stage of the proceeding" and that "[t]he denial of the opportunity to confer with an attorney results in reversible constitutional error." J.A. at 40. Therefore, the district court concluded that Mitchell had been constructively denied counsel for the purposes of the Sixth Amendment and conditionally granted Mitchell's petition for habeas relief.

Warden Mason appeals from the district court's judgment.

## III.  ANALYSIS

### A.  Standard of Review

Whether the district court properly granted the writ of habeas corpus is a question of law that we review de novo. *Doan v. Brigano*, 237 F.3d 722, 729 (6th Cir. 2001). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996),

which amended 28 U.S.C. § 2254, applies to all habeas petitions filed after April 24, 1996, the effective date of the Act. Because Mitchell's petition for habeas was filed after the effective date, AEDPA governs our review of this case.

Pursuant to AEDPA, a writ of habeas corpus may "not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The federal court must presume that all determinations of factual issues made by the state court are correct unless the defendant can rebut that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The question whether Mitchell was deprived of his right to effective assistance of counsel is a mixed question of law and fact. *Olden v. United States*, 224 F.3d 561, 565 (6th Cir. 2000). In a habeas case, we apply the "unreasonable application" prong of § 2254(d)(1) to a mixed question of law and fact. *Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court elaborated upon the independent meaning conveyed by the "contrary to" and "unreasonable application of" clauses of the statute, as well as the distinct analysis to be performed under each clause. *Williams*, 529 U.S. at 410 (O'Connor, J., concurring). According to the Court, a federal habeas court may find that the state court decision resulted in an "unreasonable application of" clearly established Federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies

The Sixth Amendment assures confidential communication between a defendant and his lawyer. *United States v. Henry*, 447 U.S. 264, 295 (1980) ("the Sixth Amendment, of course, protects the confidentiality of communications between the accused and his attorney." (Blackmun, J., dissenting); *United States v. Rosner*, 485 F.2d 1213, 1224 (2d Cir. 1973) ("the essence of the Sixth Amendment right is . . . privacy of communication with counsel."); *see also Weatherford v. Bursey*, 429 U.S. 545, 554 n.14 (1977) (noting government's concession that "because the Sixth Amendment's assistance-of-counsel guarantee can be meaningfully implemented only if a criminal defendant knows that his communications with his attorney are private").

The constitutional assurance that attorney-client communications shall be "private" in the sense that they are confidential does not mean, however, that they must be "private"in the sense that they are entirely and always outside the physical presence of other persons. This distinction is underscored by this court's rejection of the only case cited by the District Judge – his own earlier decision in *Lakin v. Stine*, 44 F. Supp. 2d 897 (E.D. Mich. 1998) – for the proposition that the Sixth Amendment requires that all communication between counsel and client be "private." In *Lakin v. Stine*, 229 F.3d 1152 (Table, Text in WESTLAW), Unpublished Disposition, 2000 WL 1256900 (6th Cir.(Mich.), Jul 13, 2000), this court held that a habeas petitioner's Sixth Amendment right to counsel had not been abridged when the trial court refused his request to meet with his attorney outside the presence of guards who had been stationed in a jailhouse conference room. *Accord Abrams v. Barnett*, 100 F.3d 485, 489-92 (7th Cir. 1996), *vacated on other grounds*, ___ U.S. ___, 117 S.Ct. 2503 (1997) (rejecting habeas petitioner's claim that denial of his lawyer's request for a private place to meet with the defendant during a noon-hour recess deprived him of his right to counsel.).[1]

---

[1] I note that the American Bar Association Standards for Criminal Justice state that "to ensure the privacy essential for confidential communication between lawyer and client, adequate facilities should be

———————————

## DISSENT

———————————

CARR, District Judge, dissenting. I respectfully dissent. I believe that the district court's expressed basis for its decision to grant habeas corpus relief (namely, that the petitioner's right to "private" communication was breached when he met with his lawyer in the jailhouse bullpen) is in error, because there is no such right under the Sixth Amendment or otherwise. In addition, I disagree with the majority's conclusion that this case can be decided on the basis of *United States v. Cronic*, 466 U.S. 648 (1984). The proper standard is, rather, in light of this court's decision in *Dick v. Scroggy*, 882 F.2d 192, 197 (6th Cir. 1989), the cause and prejudice standard of Strickland v. Washington, 466 U.S. 668 (1984). The petitioner not having met his burden under *Strickland* of showing prejudice, the district court's decision should be reversed.

### I. There is no Constitutional Right to "Private" Communication

The express basis for the District Judge's decision to grant habeas corpus relief was that there had been no "private" communication between the petitioner and his lawyer prior to trial: "Mr. Mitchell's inability to secure private communication with counsel prior to trial rendered him without representation at his trial in violation of the Sixth Amendment." (App. 40).

The District Judge appears to have assumed that "private" communication could not occur within the bullpen of the county jail. While such may, in fact, be the case, there is no evidentiary support for this assumption. The District Judge, moreover, failed to point to evidence in the record that the circumstances foreclosed *confidential* communication between the petitioner and his attorney.

that principle to the facts of the prisoner's case." *Id.* at 413. The Supreme Court cautioned that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.    Rather, that application must also be unreasonable." *Id.* at 411.   The *Williams* decision also clarified that in our review of the state court's judgment, we may only took to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision to determine whether the state court unreasonably applied clearly established federal law. *See id.* at 412.

With these guidelines in mind, we turn to the question whether the district court properly granted Mitchell's petition for habeas corpus relief.

### B. Procedural Default

Preliminarily, we must address the Warden's first argument that the district court erred by evaluating Mitchell's ineffective assistance of trial counsel claim instead of rejecting it as procedurally defaulted in state court. Warden Mason asserts that under Michigan law, when the effectiveness of a lawyer's representation is challenged, the lawyer must be called as a witness to testify at the *Ginther* hearing in order to create the proper evidentiary record. According to the Warden, Mitchell's failure to call his trial counsel at the *Ginther* hearing violated this state procedural rule.   Therefore, Mitchell was unable to establish the necessary factual record from which that court could evaluate his claim.  The Warden asserts that the Michigan Supreme Court relied on this state procedural rule to deny Mitchell relief.

When the state argues that a petitioner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). For the doctrine of procedural default to bar federal review, however, a firmly established and regularly followed state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that rule. *See Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (explaining that an adequate and independent state procedural bar to the consideration of "constitutional claims must have been 'firmly established and regularly followed' by the time as of which it is to be applied") (citing *James v. Kentucky*, 466 U.S. 341, 348 (1984)). We have jurisdiction to review the petitioner's federal claim unless the last state court from which the petitioner sought review clearly and expressly invoked a firmly established state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 735.

Based on our review of Michigan case law, we conclude that there was no well-established state procedural rule as of the time that Mitchell's claim was reviewed which barred appellate review in the absence of trial counsel's testimony at a *Ginther* hearing. At oral argument before this court, counsel for the Warden first pointed us to this very case, *People v. Mitchell*, 560 N.W.2d 600 (Mich. 1997), as evidence that Michigan has a firmly established procedural rule requiring the defendant to call defense counsel at a *Ginther* hearing or risk procedurally defaulting the claim. Of course, citing to the very case under review is useless to counsel because it is his burden to demonstrate that the rule was *already* firmly established and regularly followed as of the time the state court invoked the rule. *See Ford*, 498 U.S. at 423-24. Counsel for the Warden then cited to a one-paragraph order in another case granting a *Ginther* hearing, *People v. Williams*, 391 Mich. 832 (1974), to support his contention. This single, one-paragraph order is utterly insufficient to demonstrate the existence of a state procedural rule so "firmly established and regularly followed" that it may bar a petitioner's federal constitutional claim on collateral review. *Ford*, 498 U.S. at 423-24 (quoting *James*, 466 U.S. at 348).

## IV. CONCLUSION

In light of the Michigan Supreme Court's assumption that the pre-trial period, during which investigation and consultation with the defendant must occur, was not a "critical stage" of the proceedings, the Michigan Supreme Court unreasonably applied clearly established Supreme Court precedent to the facts of this case. *See* 28 U.S.C. § 2254(d)(1). The Supreme Court has long recognized that there is a duty to investigate before trial and that, by failing to consult with the defendant, counsel cannot perform this duty during a critical stage. The undisputed record evidence demonstrates that Mitchell's counsel never consulted with him and that he was completely unrepresented during the entire month prior to his trial. These are clearly circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. Therefore, the Michigan Supreme Court erred by rejecting the per se prejudice analysis and insisting on evaluating Mitchell's claim through the lens of *Strickland*. For the foregoing reasons, we **AFFIRM** the district court's provisional grant of the writ of habeas corpus.

to pursue, whether there are witnesses for the defense, or what kind of alibi the defendant may have.[15]

In *Cronic*, the Supreme Court delineated those few exceptional circumstances that are so likely to prejudice the defendant that a reviewing court need not examine the consequences of the lawyer's conduct: one of these circumstances is the complete denial of counsel to a criminal defendant at a critical stage of the proceedings. *Cronic*, 466 U.S. at 659. In this case, we have demonstrated that, according to Supreme Court precedent, we must consider the pre-trial period "critical" for purposes of the Sixth Amendment. Although Mitchell alleged that his counsel's performance during trial was inadequate, he also alleged that his counsel was utterly absent during the seven-month period prior to trial. Because Mitchell's latter claim alleges his counsel's total absence during a critical period, the Michigan Supreme Court should have applied *Cronic*, rather than *Strickland*, to his claim.[16]

---

[15]Defense counsel's failure to speak with his client also violates several standards articulated in the ABA Standards for Criminal Justice. For example, the Duty to Keep Client Informed Standard states: "(a) Defense counsel should keep the client informed of the developments in the case and the progress of preparing the defense and should promptly comply with reasonable requests for information" and "(b) Defense counsel should explain developments in the case to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." ABA STANDARDS FOR CRIMINAL JUSTICE 4-3.8 (3d ed. 1993).

[16]Finally, although the district court did not comment upon Mitchell's claim that his appellate counsel was constitutionally ineffective, we note that, were we to accept the Warden's argument that a defendant forfeits his ineffective assistance of counsel claim if he fails to call his trial attorney as a witness at the *Ginther* hearing, we do not believe that the appellate counsel's failure to call the trial attorney could be considered reasonable strategy on the facts of this case. It is not strategy for an appellate attorney to ask for a *Ginther* hearing and then to conduct it in such a way as to legally preclude relief for the defendant.

---

When there has been no motion for a new trial or a *Ginther* hearing, the case law reveals that a Michigan reviewing court *will* consider claims of ineffective assistance of counsel but will be forced to limit itself to examining the trial record for errors, as no other record has been developed.[6] Thus, while *Ginther* and its progeny indicate that it is crucial to develop an adequate record of trial counsel's failures if petitioner's claim is to succeed, we believe that those Michigan courts that have rejected ineffective assistance of counsel claims have done so on the merits of the claim and not due to a procedural default.[7] Because we conclude that there was no firmly established and regularly followed state procedural rule to bar Mitchell's ineffective assistance claim when the Michigan Supreme Court reviewed this case, the district court did not err in considering the claim and we need not engage in a cause-and-prejudice analysis before reaching the substance of Mitchell's claim.

## C. Application of AEDPA

The threshold question under AEDPA is whether Mitchell seeks to apply a rule of law that was clearly established at the time his state court conviction became final. *Williams*, 529

---

[6]*See, e.g.*, *People v. Snider*, 608 N.W.2d 502, 517 (Mich. Ct. App. 2000) (where defendant has failed to move for a new trial or an evidentiary hearing, his claim for ineffective assistance of counsel is "largely forfeited" because review is limited to the existing record); *People v. Williams*, 566 N.W.2d 649, 652 (Mich. Ct. App. 1997) ("Because there was no *Ginther* hearing, our review is limited to mistakes apparent on the record."); *People v. Dixon*, 552 N.W.2d 663, 669 (Mich. Ct. App. 1996) ("Defendant failed to created a testimonial record in the trial court with regard to his claims of ineffective assistance. This failure forecloses appellate review unless the record contains sufficient detail to support defendant's claims.").

[7]In this case, the Michigan Supreme Court determined that, because Evelyn was not called to testify at the *Ginther* hearing, it had "no factual basis for a conclusion that counsel's performance was constitutionally deficient and undermines confidence in the reliability of the verdict." *Mitchell*, 560 N.W.2d at 609. This is a decision on the merits of Mitchell's claims as presented to the court.

U.S. at 390. There is no doubt that the rule of law that Mitchell seeks to apply — the "per se" ineffective assistance of counsel rule — was clearly established by the Supreme Court in *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Supreme Court held that an appeals court must reverse a criminal defendant's conviction "without any specific showing of prejudice to defendant when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U.S. at 659 n.25. In other words, when counsel is totally absent during a critical stage of the proceedings, prejudice must be presumed. In *Williams*, the Supreme Court confirmed the vitality of this "per se" approach, noting that while the *Strickland v. Washington*, 488 U.S. 668 (1984), test for ineffective assistance of counsel, requiring proof of deficient performance and prejudice, provides guidance for resolving virtually all ineffective assistance of counsel claims, there are "a few situations in which prejudice may be presumed." *Williams*, 529 U.S. at 391 (citing *Strickland*, 466 U.S. at 692). We have recently applied the presumption-of-prejudice test to a claim of ineffective assistance of counsel. *Olden*, 224 F.3d at 568 (prejudice is presumed when counsel is absent during prosecution's presentation of evidence that implicates defendant because such absence occurred during "critical stage" of trial). Thus, we easily reach the conclusion that it was clearly established by the Supreme Court, as of the time that Mitchell's case was decided in state court, that the "complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice." *Roe v. Flores-Ortega*, 120 S. Ct. 1029, 1038 (2000) (citing *Cronic,* 488 U.S. at 659).

Because there is clearly established law applicable to Mitchell's claim, the next question we must address is whether the Michigan Supreme Court's decision rejecting Mitchell's ineffective assistance claim was "an unreasonable application of" that established law or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). The Warden correctly argues that the

*must expressly indicate same in writing*." J.A. at 108c (emphasis added). The letter then states: "[S]hould you have any questions or concerns, please do not hesitate to contact Myzell Sowell," Evelyn's law partner. *Id.* The record does not indicate that Mitchell retained Evelyn's law partner, nor does it indicate that he in any way consented to a substitution in counsel. Moreover, we note that no counsel appeared on Mitchell's behalf at the April 11, 1989 hearing before the trial court, which was conducted during Evelyn's suspension, on Mitchell's motion for new counsel. Thus, we conclude that, despite the Michigan Supreme Court's finding, there is clear and convincing evidence that Mitchell was completely unrepresented for the last thirty days prior to his trial.

The Michigan Supreme Court held that, even if it were to find the defendant and his mother credible and assume that Evelyn never contacted witnesses and only met with the defendant three times, it would not find a denial of counsel at a critical stage. *Mitchell*, 560 N.W.2d at 609 n.15. Instead, the Michigan Supreme Court found that the allegations of trial counsel's deficient performance would have to meet the *Strickland* standard of deficient performance and prejudice. *Strickland*, however, applies great deference to decisions by defense attorneys out of concern that a rigid set of guidelines or rules would "interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 689. The defendant bears the burden of proving counsel's ineffectiveness out of deference for counsel's decisions and trial strategy. *See id.* The illogic of applying *Strickland* to these facts is manifest in that there are no conceivable tactical or strategic reasons for defense counsel to fail to consult with a client prior to trial. Such a meeting is vital if counsel is competently to develop a defense. If counsel does not meet with his client for more than two minutes at a time, the defendant is unable to confide truthfully in his lawyer and counsel will not know, for example, which investigative leads

Q: Did you see Mr. Evelyn at the Wayne County Jail before your trial in this case?

A: No, I never did.

Q: When was the first time you saw him in the jail, if at all?

A: The second date — I mean the first day of picking out the jury.

\*\*\*

Q: Before your trial started, in the weeks or months leading up to it, did you contact, or attempt to contact your attorney?

A: Yes, I did. I wrote him letters. They wouldn't accept telephone calls.

J.A. at 151-53 (emphasis added).

The fact that Mitchell's counsel was suspended from the practice of law for the thirty days prior to trial does not decide this case, but it does contribute to the weight of the evidence that demonstrates that there was no consultation between Mitchell and his attorney prior to trial. The Michigan Supreme Court found that Mitchell was never unrepresented during any critical stage of the proceedings. According to that court, because Evelyn's law partner assumed responsibility for Evelyn's cases during his suspension, "there was no period of time when the defendant was not represented." *Mitchell*, 560 N.W.2d at 609 n.15. The Michigan Supreme Court's presumption that Mitchell was continuously represented is directly contradicted by the record. In a letter sent to Mitchell on April 10, 1989 informing him of his suspension, Evelyn advised Mitchell: "You may wish to seek legal advice elsewhere and, in the event you choose to do so, you may either pick-up your file or have your new attorney pick-up your file. You may, should you choose to do so, have your case maintained by our law firm; *in which case, you*

district court failed to review the Michigan Supreme Court findings under the deferential standard of review mandated by AEDPA. The district court's order did not determine whether the Michigan Supreme Court's analysis was objectively unreasonable; instead, it essentially reviewed Mitchell's claims de novo. We must now, therefore, conduct the appropriate review of the Michigan Supreme Court's decision.

## D. Mitchell's Ineffective Assistance of Counsel Claim

Although the Michigan Supreme Court properly acknowledged Supreme Court precedent by noting that "[t]he right to counsel extends to representation during any 'critical stage' of the proceedings," it then concluded that the right to counsel "does not require the state to provide the defendant with unlimited access to the attorney during the trial" and that "[a] fortiori, it does not guarantee a defendant 'a private in-depth interview' during pretrial in the place of the defendant's choosing." *Mitchell*, 560 N.W.2d at 605 n.9 (internal citations omitted).

Framing this case as one about "allegations of inadequate preparation," the Michigan Supreme Court declined to apply a per se prejudice analysis to Mitchell's claim after rejecting the suggestion that Mitchell's case presented circumstances that made it unlikely that any lawyer could provide effective representation, that Mitchell was constructively denied counsel, or that he was denied counsel combined with a failure to grant a continuance. *See id.* at 607. The Michigan Supreme Court refuted these theories in inverse order. Relying on *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983), for the proposition that "[n]ot every restriction on counsel's . . . opportunity to investigate . . . or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel," the Michigan Supreme Court determined that it was not error for the state trial court to deny Mitchell's request for a continuance so that he could consult with his lawyer prior to trial. *Mitchell*, 560 N.W.2d at 607 (quoting *Morris*, 461 U.S. at 11-12). Pointing to *United States v. Cronic*, 466 U.S. 648

(1984), the Michigan Supreme Court then held that Evelyn's thirty-day suspension did not constitute a constructive denial of counsel. Moreover, the Michigan Supreme Court declared, a claim of ineffective assistance of counsel "stemming from a thirty-day suspension coupled with six-months time for preparation" does not, pursuant to *Cronic,* create a circumstance making it so unlikely that any lawyer could provide the defendant with constitutionally effective assistance. *See Mitchell*, 560 N.W.2d at 609.

The Michigan Supreme Court then evaluated Evelyn's performance to determine whether it was deficient under the familiar two-part *Strickland* standard and concluded it was not. *Id.* The court first stated that there was no factual basis for concluding that Evelyn's performance was constitutionally inadequate. *See id.* at 609-10. The court then performed the first part of the *Strickland* analysis based on the record before it and determined that Evelyn's performance met constitutional muster. *See id.* at 610-11.

After a thorough review of the record, we are convinced that the undisputed amount of time that Evelyn spent with Mitchell prior to jury selection and the start of trial — approximately six minutes spanning three separate meetings in the bullpen, when viewed in light of Evelyn's month-long suspension from practice immediately prior to trial — constituted a complete denial of counsel at a critical stage of the proceedings. We conclude that, in insisting on evaluating Mitchell's claim under the *Strickland* standard for ineffective assistance of counsel, the Michigan Supreme Court erroneously and unreasonably applied clearly established Supreme Court law established in *Cronic*.[8]

---

[8]In *Dick v. Scroggy*, 882 F.2d 192, 197 (6th Cir. 1989), a panel of this court applied the *Strickland* deficient performance-and-prejudice analysis to a defendant's claim that his defense counsel was constitutionally ineffective because she only interviewed him for 30-45 minutes the night before trial. The court in *Dick* neither addressed whether *Cronic* applied to the facts before it nor specifically rejected it; rather, the court assumed that *Strickland* applied. The absence of

the letter he wrote to the trial court as well as his testimony before the trial court during jury selection.

Q:   Who was your attorney for this case?

A:   Attorney Gerald Evelyn.

Q:   Do you recall when you saw this person in relation to the preliminary examination?

A:   I recall seeing him sitting in the courtroom, the first time I met him.

Q:   At the preliminary examination?

A:   Yes.

Q:   And, how much contact with him did you have before the preliminary examination?

A:   None.

\* \* \*

Q:   When did you next see your attorney?

A:   Well, I would see him in the bullpen behind the courtroom, maybe about three times — three different proceedings.

Q:   And, those were later proceedings in Recorder's Court?

A:   Yes.

Q:   And, roughly, would you say how much contact did you have with him before the court proceedings?

A:   *One or two minutes*.

\* \* \*

went to his office, also, left word with his secretary. And he also showed up an hour late on my final conference and by him letting me know yesterday that he was going to come over and talk with me and by him failing to do that, I just, I just feel it's just incompetent.

J.A. at 174. When the court asked: "[n]ow, in those letters, it was a question of his not keeping appointments, or seeing you as many times as you'd like to be seen in the jail; is that right?" Mitchell then replied: "Yes. *Never seeing me at all*." J.A. at 174 (emphasis added). He further asserted that "[t]he only time I meet him is in the courtroom, or brief discussion in the bullpen with plenty of other people in the bullpen. I just don't see how courts can say that that's true fairness." J.A. at 187. Mitchell, who is hard of hearing, also claimed that because he was not wearing his hearing aid in the bullpen, he could not hear half of what his lawyer was saying to him. J.A. at 184. At one point, Mitchell asked: "[H]ow can I make it all the way to trial when Mr. Evelyn has never heard my true side of the story." J.A. at 185-86.

Evelyn testified at length during this hearing. While he made the argument that he had delivered discovery materials to Mitchell and was in the process of working out a deal with the prosecutor to suppress certain evidence on the eve of trial, he never disputed the substance of Mitchell's allegations. At one point he did claim: "I talked to him [Mitchell] prior to the [pre-trial] examination, your Honor. He's leaving one visit out at least. We have talked on numerous occasions." J.A. at 186. This non-responsive statement, however, is conclusive only of the fact that he and Mitchell had met in the courtroom bullpen before court appearances, which Mitchell acknowledged. Notably, when presented with the opportunity to clear the record before the trial court judge, Evelyn never disputed the substance of Mitchell's assertions regarding the content of their communications.

At the *Ginther* hearing, Mitchell also testified about the nature of his contact with Evelyn prior to the trial. His testimony at this hearing is consistent with the substance of

## E.  Constructive Denial of Counsel

The Michigan Supreme Court properly noted the general principles that are applicable to this case, most importantly that the right to the assistance of counsel is the right to effective assistance of counsel. *Cronic*, 466 U.S. at 654. At issue is not the accused's relationship with his lawyer as such, but the integrity of the adversarial process and the right of the accused to "require the prosecution's case to survive the crucible of meaningful adversarial testing." *Id.* at 656, 657 n.21. As the Michigan Supreme Court observed, to prove ineffective assistance of counsel, a defendant must typically demonstrate that specific errors made by trial counsel affected the ability of the defendant to receive a fair trial. The United States Supreme Court has, however, recognized that there are some "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. Such circumstances include the complete denial of counsel, as when counsel is either totally absent or prevented from assisting the accused, at a critical stage of the proceedings. *Id.* at 659. When a complete denial of counsel occurs, the constitutional error is of such a magnitude that a defendant need not "show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 n.26.

The Michigan Supreme Court's error was to focus its analysis on Evelyn's thirty-day suspension from the practice of law and frame this case as one about inadequate preparation time. It is true that the Supreme Court has made clear that "external constraints" on trial counsel's

---

reasoning in that case does not persuade us that we must apply *Strickland* to Mitchell's claim. Moreover, the facts of that case are distinguishable: in *Dick*, the defendant was interviewed by his lawyer for 30-45 minutes in one meeting, while in the instant case, Mitchell claims that he met with his lawyer for a total of six minutes spanning three separate meetings. Indeed, the heart of Mitchell's claim is that his lawyer never interviewed him at all. Therefore, based on the law and the facts, we conclude that *Dick* is not controlling authority.

performance, such as the trial court's refusal to grant a continuance, will not give rise to a presumption of prejudice. Time constraints do not obviate the need for an individualized inquiry into trial counsel's performance in each case. *See Cronic*, 466 U.S. at 662 n.31. This case is not, however, about external constraints on trial counsel's time to prepare: as the Michigan Supreme Court noted, trial counsel had at least six months to investigate and ready this case for trial. We believe the determinative issue is whether, during the critical seven-month pre-trial period, trial counsel consulted with his client. In *Cronic,* the Supreme Court made clear that there is a per se denial of counsel when counsel is "either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25. As we will explain, we believe that the pre-trial period must, according to close analysis of Supreme Court precedent, be considered "critical" for Sixth Amendment purposes. Therefore, Evelyn's failure to consult with Mitchell for more than six minutes, coupled with counsel's month-long suspension from practice, must be considered a per se denial of counsel because counsel was "totally absent . . . during a critical stage of the proceedings."[9] *Id.* The Michigan Supreme Court's decision to the contrary represents an unreasonable application of clearly established Supreme Court precedent.

By erroneously framing its analysis solely around Evelyn's thirty-day suspension, the Michigan Supreme Court failed

---

[9]We note that we have held that when an attorney is absent from the courtroom due to a death in the family while the government is presenting evidence of defendant's guilt, then counsel is absent during a critical stage of the proceeding, and there is a per se denial of counsel if defendant did not knowingly waive his right to counsel. *Olden v. United States*, 224 F.3d 561, 568 (6th Cir. 2000); *see also United States v. Patterson,* 215 F.3d 776, 786 (7th Cir. 2000) (defendant whose lawyer skips multiple days of trial where client has not agreed to substitute representation suffers per se denial of counsel); *Green v. Arn*, 809 F.2d 1257, 1263 (6th Cir. 1987), *aff'd after remand*, 839 F.2d 300 (6th Cir. 1988) (per se denial of counsel when defendant's lawyer was absent during taking of evidence on defendant's guilt).

went to court my lawyer has told me that he would be over to talk to me, but never did.....Every since my second month of being incarcerated I have had my mother go over to his office concerning an evidentiary hearing, she have been at his office many times, she has wrote many letters but he has never replied to her....I know I'm charged for something I haven't done, but I know that if I can't express to Gerald K. Evelyn what happen on the night this incentdent occurd he will not know the best stradagy of what and how to fight this case....For 5 months I have waited patiently, I have tryed every way I can to get him to talk to me, I am tired of being in the dark and knowing he's in the dark....So your honor Please take him off my case because he's not representing me at all.

J.A. at 108a - 108b (Handwritten Letter from Mitchell). No one responded to his letters until eleven days before the start of the trial.

On April 27, 1989, the trial judge convened a hearing to discuss Mitchell's motion for appointment of new counsel. At the hearing, Mitchell informed the trial court that he had received a letter stating that Evelyn had been suspended from the practice of law; it does not appear that the trial court was even aware that Evelyn had been suspended. Evelyn did not attend this hearing, presumably because he was suspended from practice at this point. The trial judge postponed a decision on Mitchell's motion until Evelyn was able to be present.

On May 9, 1989, the second day of jury selection, the trial court revisited the issue of Mitchell's request for new counsel. Evelyn was present at this time. At this hearing, Mitchell stated to the court:

Well, from the very beginning, you know, Mr. Evelyn promised to talk with me. He has failed to talk with me on every occasion that he promised. He has failed to make any motions for me, and he's failed to talk with my mother, which she has written many letters and calls, and

## F. Mitchell's Pre-Trial Contact With His Attorney

The Warden argues that the district court based its decisions on factual findings specifically rejected by the state courts in violation of § 2254(e)(1), which requires a habeas court to presume that all factual findings made by a state court are correct absent clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1). The presumption of correctness does not, however, extend to the Michigan Supreme Court's legal conclusion that Mitchell was not without counsel at a critical stage of the proceedings. Thus, the Michigan Supreme Court's pronouncement that "[t]here is no factual basis for a conclusion that counsel's performance was constitutionally deficient," *Mitchell*, 560 N.W.2d at 609,[14] is not due the deference accorded to a pure finding of fact, as this statement encompasses a mixed question of law and fact, which we review de novo. Indeed, our conclusion is dictated by our application of law to facts in the state court record, which is properly governed by § 2254(d)(1).

Although the Michigan Supreme Court stated that "[n]o record was made regarding what Mr. Evelyn did or did not do," *Mitchell*, 560 N.W.2d at 609, that court noted that Mitchell "wrote six letters to the trial judge, the chief judge and others requesting removal of counsel," *id.* at 603. These letters, which were part of the record before the Michigan Supreme Court, document Mitchell's unsuccessful efforts to contact his attorney. For example, on February 8, 1989, Mitchell wrote to the court:

> I have been locked up for 5 months and not once have my lawyer took time out to talk to me....3 times after I

---

[14]The dissent also rejects the Michigan Supreme Court's determination that the record did not support the conclusion that counsel's performance was constitutionally deficient. *See infra* at 38. Indeed, the dissent concludes that this aspect of the Michigan Supreme Court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," another basis for granting habeas relief. *Infra* at 38 (quoting 28 U.S.C. § 2254(d)(2)).

even to consider whether the pre-trial period constitutes a "critical stage of the proceedings."[10] Indeed, the Michigan Supreme Court concluded that "[d]efendant was not unrepresented during any critical stage of the proceedings," *Mitchell*, 560 N.W.2d at 609 n.15, because he "was represented at the preliminary examination, during trial, and during all critical stages through sentencing." *Id.* Moreover, the Michigan Supreme Court stated that "[e]ven if defendant and his mother were fully creditable and Mr. Evelyn . . . only met with the defendant three times, this is not a 'denial of counsel' during a critical stage. Rather, these are allegations of deficient performance by counsel that must meet the *Strickland* standard." *Id.*

The Supreme Court has decided several cases that make clear that the period between appointment of counsel and the start of trial is indeed a "critical stage" for Sixth Amendment purposes. In *Powell v. Alabama*, in which a group of African Americans accused of raping two white girls were not appointed counsel until the day of trial, the Supreme Court found that a criminal defendant "requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." *Powell v. Alabama*, 287 U.S. 45, 69 (1932). In support of its finding that defendants in that case were per se denied effective assistance of counsel, the Court noted that:

> [D]uring perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation

---

[10]Even the dissent acknowledges that a defense lawyer's failure to consult with his client prior to trial violates the Sixth Amendment. *See infra* at 37. Indeed, the dissent concludes that the Michigan Supreme Court's holding that Mitchell had not demonstrated constitutionally deficient performance under *Strickland* was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," which is, of course, one basis for granting habeas relief.

and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself.

*Id.* at 57. Indeed, the Court remarked that "[n]o attempt was made to investigate. No opportunity to do so was given . . . . Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense. To decide otherwise, would simply be to ignore actualities." *Id.* at 58. Later, in *Cronic*, the Supreme Court noted that if no actual "assistance" for the accused's defense is provided, then the Sixth Amendment guarantee has been violated. According to the Court, "[a]ssistance begins with the appointment of counsel, it does not end there." *Cronic*, 466 U.S. at 654 n.11; *cf. Moran v. Burbine*, 475 U.S. 412, 431 (1986) (noting that defendant's Sixth Amendment right to counsel attaches "after the initiation of formal charges").

The pre-trial period constitutes a "critical period" because it encompasses counsel's constitutionally imposed duty to investigate the case. In *Strickland*, the Supreme Court explicitly found that trial counsel has a "duty to investigate" and that to discharge that duty "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The Supreme Court also recognized that without pre-trial consultation with the defendant, trial counsel cannot fulfill his or her duty to investigate. The Court stated that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Id.* The Court went on to emphasize further the significance of the defendant's input into trial counsel's investigation:

In particular, what investigation decisions are reasonable depends critically on such information [provided by defendant]. For example, when the facts that support a

Supreme Court, "[s]uch recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events." *Id.* at 88. If a defendant must be allowed to consult with his lawyer during an overnight recess, surely the defendant has the right to consult with his lawyer for more than six minutes during the critical pre-trial period.

We do not believe that the rule of law put forth by the Michigan Supreme Court, that the Sixth Amendment "does not guarantee a defendant 'a private in-depth interview' during pretrial in the place of the defendant's choosing," *Mitchell*, 560 N.W.2d at 605 n.9, is an accurate reflection of any known Supreme Court precedent, nor does it in any way decide this case. Mitchell makes no extravagant claim regarding an "in-depth" interview, nor does his complaint hinge on the fact that his meetings with his attorney all took place in the bullpen at the Recorder's Court, where he arguably had no privacy. Mitchell's claim for relief is simply that Mitchell's attorney never consulted with him prior to the start of trial. This claim is adequately borne out by the record.

---

*He has an absolute right to such consultation before he begins to testify*, but neither he nor his lawyer has a right to have the testimony interrupted in order to give him the benefit of counsel's advice." *Perry*, 488 U.S. at 281 (emphasis added). The Court's holding in *Perry* is a narrow one which is confined to the period in which a defendant is testifying. The case does not support the much broader proposition that the defendant may not have unlimited access to his attorney during the trial. Indeed, by noting that the defendant "has an absolute right" to consult with his attorney before he begins to testify, the Supreme Court appears to have held the opposite of the Michigan Supreme Court's interpretation.

falling squarely within *Slappy*'s purview, this case more closely resembles those cases in which there is "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." *Slappy*, 461 U.S. at 11-12 (internal citations omitted). The Michigan Supreme Court's reliance on *Slappy* is objectively unreasonable in light of the facts in the record.

Our analysis makes clear that, although the Michigan Supreme Court properly identified the appropriate Supreme Court precedent, i.e., that counsel's absence during a critical stage of the proceeding constitutes a per se denial of counsel, it then erroneously and unreasonably applied that precedent by failing to consider whether the pre-trial period was "critical." The Michigan Supreme Court also failed to apply *Geders v. United States*, in which the Supreme Court held that the right to counsel encompasses the right to confer with one's lawyer. *Geders*, 425 U.S. 80, 88-89 (1976). *Geders* held that a court order preventing counsel for the defendant from consulting with his client during an overnight recess in the midst of defendant's testimony constituted a per se denial of counsel during a critical stage of the proceedings in violation of the Sixth Amendment.[13]　According to the

---

is not controlling because it involved a defendant's re-trial, not his first trial, and the issue directly before the Court was a last-minute appointment and the ability of counsel to prepare for trial. Moreover, Chambers's second lawyer was presumably privy to the investigation and research prepared by Chambers's first lawyer, whose performance went unchallenged.

[13]The Michigan Supreme Court cited to *Perry v. Leeke*, 488 U.S. 272 (1989), to support the proposition that the right to counsel "does not require the state to provide the defendant with unlimited access to the attorney during the trial." *Mitchell*, 560 N.W.2d at 605 n.9. *Perry* dealt with a defendant's assertion that his right to counsel was presumptively denied when the state court refused to allow him to consult with his lawyer during a fifteen-minute recess between his direct and cross-examination. Distinguishing between the fifteen-minute recess at issue in the case before it and the overnight recess at issue in *Geders*, the Supreme Court observed that "when a defendant becomes a witness, he has no constitutional right to consult with his lawyer while he is testifying.

---

certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.

*Id.* Because the Supreme Court has repeatedly made clear that there is a duty incumbent on trial counsel to conduct pre-trial investigation, it necessarily follows that trial counsel cannot discharge this duty if he fails to consult with his or her client.[11]

In addition to its failure to recognize the importance of the pre-trial period and the significance of lawyer-client consultation during that period, the Michigan Supreme Court erroneously and unreasonably relied on *Morris v. Slappy*, 461 U.S. 1 (1983), in denying Mitchell's ineffective assistance claims. According to the Michigan Supreme Court, *Slappy* "demonstrates that the suggestion that defendant's right to counsel was violated because the trial court should have granted a continuance is error." *Mitchell*, 560 N.W.2d at 607

---

[11]This is not, as counsel for the Warden claims, a new rule of law. As our discussion of Supreme Court precedent indicates, the Supreme Court has considered the pre-trial period to be a critical stage of the proceedings since at least 1932, when it handed down *Powell*. A new rule of law "breaks new ground or imposes a new obligation" on the states or the federal government. Alternatively, a court announces a new rule of law "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 300-01 (1989). It cannot seriously be argued that defense counsel's obligation to consult with his client at least once is a new or novel obligation being imposed on the government or that the Supreme Court's cases in *Powell*, *Strickland*, and *Cronic* do not compel this result.

(footnote omitted). *Slappy* involved a defendant who claimed that because his public defender fell ill and replacement counsel was substituted twenty-five days before trial, he was effectively unrepresented and deserved a new trial. As the Michigan Supreme Court noted, the *Slappy* Court, in rejecting the defendant's claim, held that "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel . . . . [B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for a delay violates the right to the assistance of counsel." *Slappy*, 461 U.S. at 11-12 (internal citations omitted).

*Slappy*, however, merely stands for the proposition that not every external limitation on trial counsel's ability to prepare or consult with his client constitutes a per se denial of counsel. The facts in *Slappy* offer lower courts a guide to applying the Court's holding, and the facts render it completely distinguishable from this case. In *Slappy*, the new public defender appointed to defendant's case repeatedly assured the trial court that he was prepared to try the case based on his conferences with the defendant and the study he had made of the investigation. The trial court specifically noted that the first public defender had "well prepared" the case and that the new counsel "had read the transcript of the preliminary hearing, and had 'prepared the case, reviewed all the matters, obtained the pictures, and other items that he intends to produce into evidence.'" *Id.* at 7 (internal quotation omitted). Trial counsel himself stated that "'[m]y feeling is that all investigation that needed to be done and that should be done and quite possibly that could have been done has been done.'" *Id.* (internal quotation omitted).

When the Ninth Circuit reviewed the case, it granted habeas relief after holding that the Sixth Amendment included the right to a "meaningful attorney-client relationship." Reversing, the Supreme Court rejected the "meaningful relationship" requirement because "[n]o court could possibly

guarantee that a defendant will develop the kind of rapport with his attorney . . . that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel." *Slappy*, 461 U.S. at 13.

Mitchell, however, did not seek new counsel on the ground that he did not have a good "rapport" with Evelyn; he sought to replace Evelyn because his counsel refused to consult with him prior to trial. In *Slappy*, the Court took note of the fact that the defendant's objections appeared to be tactics to delay trial and were not made in good faith. *See id.* at 13. In this case, in contrast, Mitchell sought new counsel for six months prior to his trial. The only reason the question was addressed on the second day of jury selection was because the trial judge failed to rule on any of Mitchell's previous motions for new counsel. Moreover, the *Slappy* Court observed that defendant's new counsel demonstrated "his prompt study of the investigation, his careful review of the materials prepared . . . for trial, his conferences with [defendant], and his representation to the court that 'a further continuance would not benefit me in presenting the case.'" *Id.* at 12.

*Slappy* does not stand for the proposition that trial counsel need never speak with his client prior to trial; it merely holds that there is no constitutional requirement that defense counsel develop a "rapport" with his client.[12] Instead of

---

[12] Likewise, *Chambers v. Maroney*, 399 U.S. 42, 54 (1970), does not stand for the proposition that defense counsel need not speak with his client prior to trial. The Warden cites *Chambers* for the same proposition as *Slappy*, that "[n]ot every restriction on counsel's time . . . to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to trial." *Slappy*, 461 U.S. at 11. According to the Supreme Court, *Chambers* stands for the proposition that there is no "per se rule requiring reversal of every conviction following tardy appointment of counsel." *Chambers*, 399 U.S. at 54. In *Chambers*, appointed counsel met with the defendant minutes before defendant's re-trial was about to begin. The Supreme Court rejected defendant's challenge to the adequacy of his counsel, concluding that the Court of Appeals, which had investigated counsel's performance, did not err in holding that defendant was not prejudiced by his lawyer's later appointment and that there was no per se rule of prejudice which applied to defendant's case. *Chambers*